# THE SUPREME COURT

OF

# OREGON.

## OCTOBER TERM, 1890.

[Filed March 4, 1890.]

## * J. H. KOONTZ *v.* O. R. & N. CO.

(1) Where the language is, that "an engine" of the defendant company at the time and place specified, etc., by reason of negligence, caused the destruction of the plaintiff's property, *held*, that the allegation does not identify the particular engine which caused the mischief. (2) It is the duty of the plaintiff in actions of this character to state as definitely as possible what train caused the injury, so that the company may be able to identify the engine and investigate what its condition was, and the conduct of its agents and servants at that time. (3) The escape of fire from a passing engine whereby property is destroyed, raises a presumption of negligence in the construction and management of such engine and casts on the defendant the burden to rebut such presumption. (4) When the presumption raised is rebutted by proof of proper construction of the engine and the use of proper appliances and careful management, the plaintiff cannot maintain the action without making proof of other negligence. (5) In such an action where the objection was that the evidence of the emission of sparks by plaintiff's engine prior and subsequent to the burning in question was improperly admitted, *held*, not error, that such evidence was admissible.

ON REHEARING.

In consequence of the difficulty in identifying a passing engine, so as to make direct proof of negligence, and for the reason that the business of running railroads supposes a unity of management and a similarity in construction of the engines, the admission of evidence as to other and distinct fires from the one alleged, is permitted. When a court is asked to declare a fact established, the evidence must so completely establish that fact as to remove all doubt, otherwise it is for the decision of the jury.

Umatilla county: J. A. FEE, Judge.

Defendant appeals. Affirmed.

*Dolph, Bellinger, Mallory & Simon,* for Appellant.

*Omitted from previous volumes by mistake.—[REPORTER.]

The negligence must be proved as set out in the pleadings. Having pleaded a particular act or particular acts as negligence, that must be proved. (*Carter* v. *Kansas City, &c., R. R. Co.* 65 Iowa, 287, 21 N. W. R. 607; *Denton* v. *Chicago, R. I. & Pac. R. R. Co.* 52 Iowa, 161, 164, 35 Am. Rep. 263; *M. H. & O. R. Co.* v. *Marcott*, 41 Mich. 432, 2 N. W. R. 795, 801; *Allard* v. *Chicago & N. W. R. R. Co.* 73 Wis. 165, 40 N. W. R. 685; *Gibbons* v. *Wisconsin Valley R. R. Co.* 58 Wis. 335; *Babcock* v. *Chicago & N. W. R. R. Co.* 12 Iowa, 197, 33 N. W. R. 628-9.)

Testimony showing that some of the company's locomotives had previously or subsequently scattered fire is not admissible, unless it is also shown that the locomotive which caused the fire was one of them, and was similar in construction, state of repair and management. (*Boyce* v. *Cheshire R. R. Co.* 42 N. H. 97; *Phelps* v. *Conant*, 30 Vt. 277; *Hubbard* v. *Railroad Co.* 39 Me. 506; *Standish* v. *Washburn*, 21 Pick. 237; *Collins* v. *Dorchester*, 6 Cush. 396; *Robinson* v. *Railroad*, 7 Gray, 92; *Jordan* v. *Osgood*, 109 Mass. 457, 12 Am. Rep. 731; *Smith* v. *Railroad*, 37 Mo. 287; *Railroad Co.* v. *Doak*, 52 Pa. St. 379, 91 Am. Dec. 166; *Collins* v. *N. Y. Cent. & C. Ry. Co.* 109 N. Y. 243.)

It was not proper to allow plaintiff to offer in rebuttal testimony of the general reputation of defendant's engineer for recklessness. (*Wright* v. *N. Y. Cent. Ry. Co.* 25 N. Y. 562; *Gillman* v. *Eastern Ry.* 10 Allen, 233, 87 Am. Dec. 635; *Davis* v. *Detroit, &c., Ry. Co.* 20 Mich. 105, 120-5, 4 Am. Rep. 364.)

The mere fact that the buildings were burned by sparks emitted from defendant's locomotive does not amount to proof of negligence or wrong on the part of defendant. (*Burroughs* v. *Housatonic R. R. Co.* 15 Conn. 124, 38 Am. Dec. 64; *Indianapolis, &c., Railroad Co.* v. *Paramore*, 31 Ind. 143, 147; *Sheldon* v. *Hudson River R. R. Co.* 14 N. Y. 218, 224, 67 Am. Dec. 155; *Kansas Pacific R. R. Co.* v. *Butts*, 7 Kan. 308, 317; *Railroad* v. *Yeiser*, 8 Pa. St. 366; *Garrett* v. *Chicago & N. W. Ry. Co.* 36 Iowa, 121; *Ruffner* v. *Cincinnati, &c., R. R. Co.* 34 Ohio. St. 96.)

Such precautions have been used when the company employs

competent and careful engineers to handle and operate their engines, and provides their engines with the best appliances in known common use to prevent the escape of fire, and such engineer is not guilty of negligence in the performance of his duty. (*Butts* v. *Kansas Pacific R. R. Co.* 7 Kan. 308–310; *Burroughs* v. *Housatonic R. R. Co.* 15 Conn. 124, 38 Am. Dec. 64; *Rood* v. *N. Y. & E. R. R. Co.* 8 Barb. 80, 87; *Railroad* v. *Yeiser*, 8 Pa. St. 366–9, 374, 376; *Gulf, Colorado, &c., Co.* v. *Benson*, 69 Tex. 407, 5 Am. St. Rep. 74; *Smythe* v. *Stockton & Copperopolis Ry. Co.* 4 Pac. Rep. 505; *Searles* v. *Manhattan, &c., Ry. Co.* 101 N. Y. 661–2; *Spaulding* v. *Chicago, &c., Ry. Co.* 30 Wis. 110, 11 Am. Rep. 550; *Read* v. *Morse et al.* 34 Wis. 315, 319–20; *Gibbons* v. *Wisconsin Valley Ry. Co.* 62 Wis. 546, 22 N. W. Rep. 533; Sherman & Redfield on Negligence, § 672.)

*Tustin & Crews, Bailey & Balleray*, for Respondent.

In order to show negligence in a railroad company, in the construction and management of its engines, by reason of which property is destroyed by fire communicated from such engines, the plaintiff in an action for the recovery of damages for the destruction of such property may give evidence: *First*, of other fires caused by or the emission of an unusual quantity of sparks or fire by the same engine which is alleged to have caused the fire complained of, before or after the fire, and in about the same locality. (*A. T. & St. F. R. R. Co.* v. *Riggs*, 31 Kan. 622; *B. & O. R. R.* v. *Shipley*, 39 Md. 251; *Annapolis, &c., R. R. Co.* v. *Gault*, 39 Md. 135; *Karsen* v. *R. R.* 29 Minn. 12; *Sibley* v. *R. R.* 32 Minn. 526; *Nicholls* v. *R. R. Co.* 36 Minn. 452; *Ross* v. *Boston, &c., R. R.* 6 Allen, 87; *Loring* v. *R. R. Co.* 131 Mass. 469; *Burlington, &c., R. R. Co.* v. *Westover*, 4 Neb. 268; *Webb* v. *R. W. & O. R. R. Co.* 49 N. Y. 424, 10 Am. Rep. 389; *Wiley* v. *West Jersey R. R.* 15 Vroom, 247; *Westfall* v. *Erie R. R. Co.* 5 Hun, 175; *Ins. Co.* v. *R. R.* 11 Hun, 182; *Boyce* v. *R. R.* 43 N. H. 627; *Aycock* v. *R. R.* 89 N. C. 321; *Lawton* v. *Giles*, 90 N. C. 374; *Penn. R. R.* v. *Stranahan*, 79 Penn. St. 405; *Henry* v. *S. P. R. R. Co.* 50 Cal. 176; *Albert* v. *N. C. R. R.* 98 Penn. St. 316; *Reading R. R.* v. *Latshaw*, 93 Penn. St. 449; *Burke* v. *R. R. Co.* 7 Heisk. 451, 19 Am. Rep. 618; *Simp-*

*son* v. *R. R.* 5 La. 456; *Int. Nat. & Gt. N. R. R.* v. *Timmerman,* 61 Tex. 664; *Smith* v. *Old Col. R. R.* 10 R. I. 22; *Anderson* v. *Wasatch R. R.* 2 Utah, 518; *Cleaveland* v. *Gr. Trunk,* 42 Vt. 449; *Brighthope R. R.* v. *Rogers,* 76 Va. 443.) *Second,* evidence of other fires caused by, or the emission of an unusual quantity of sparks or fire by other engines, before or after the fire complained of, and in about the same locality. . (*Grand Trunk R. R.* v. *Richardson,* 91 U. S. 454; *Butcher* v. *V. V. Ry. Co.* 67 Cal. 518; *Steel* v. *R. R. Co.* 74 Cal. 323; *Sheldon* v. *H. R. R. Co.* 14 N. Y. 220; *Hinds* v. *Barton,* 29 N. Y. 544; *Field* v. *N. Y. C. R. R.* 32 N. Y. 339, 67 Am. Dec. 155; *R. R. Co.* v. *McClelland,* 42 Ill. 358; Sherman & Red. Neg. 333; *Huyett* v. *Phi. & R. R. Co.* 23 Penn. St. 373; *Illinois Central Ry. Co.* v. *Mills,* 42 Ill. 407; *Jeffries* v. *R. R.* 3 Houst. 447; *Louisville, &c., R. R.* v. *Stevens,* 87 Ind. 198; *St. Joseph R. R.* v. *Chase,* 11 Kan. 47; *Hoyt* v. *Jeffer,* 30 Mich. 181; *Longabaugh* v. *V. C. & T. R. R.* 9 Nev. 271; *Ellis* v. *Portsmouth & R. R. Co.* 2 Ired. (N. C.) 138; *Hoover* v. *The Mo. Pac. R. R.* S. W. Reporter; *Ins. Co.* v. *R. R.* 11 Hun, 182; *Brusberg* v. *R. R.* 55 Wis. 106; *Babcock* v. *R. R.* 62 Iowa, 593.)

The books of a private corporation are not, any more than any other private books, of themselves evidence in favor of such corporation. (Hill's Code, § 691; Hill's Code, § 767; Abbott's Trial Evidence, 245; *Low* v. *Payne,* 4 N. Y. 247; *Veiths* v. *Hagge,* 8 Iowa, 184; *Maine* v. *Harper,* 4 Allen, 115; *Himes* v. *Barnitz,* 8 Watts (Penn.), 39; Abbott's Trial Evidence, 322, § 39; *Larue* v. *Rowland,* 7 Barb. 107; *Tomlinson* v. *Borst,* 30 Barb. 46; *Cummings* v. *Nichols,* 13 N. H. 420, 38 Am. Dec. 501.)

If an instruction is deemed misleading, the aggrieved party should call the attention of the trial court to it for the purpose of giving opportunity to correct it. (*Kearney* v. *Snodgrass,* 12 Or. 317; *Reed* v. *Call,* 5 Cush. 14; *Edwards* v. *Carr,* 13 Gray, 238.)

If the circumstances established are such as a jury may infer negligence from, such as running at a high rate of speed, working the engine hard, and other acts indicating an unusual course

in operating the engine, this will be sufficient to support a verdict. (*Caswell* v. *The C. & N. W. Ry. Co.* 42 Wis. 198; *The L. N. A. & Ch. Ry. Co.* v. *Stevens*, 87 Ind. 200.)

Greater care is required when the property is near the track and exposed to danger, and working the engine hard or opening draughts in passing such property is negligence. (*Longabaugh* v. *V. C. & T. R. R.* 9 Nev. 295; *Fero* v. *B. & S. L. R. Co.* 22 N. Y. 211, 78 Am. Dec. 178; *Gorman* v. *Pac. R. R. Co.* 26 Mo. 447, 72 Am. Dec. 220; *F. & B. Turnpike Co.* v. *P. & T. R. Co.* 54 Penn. 350, 93 Am. Dec. 708; *Chi. & A. R. R. Co.* v. *Quaintance*, 58 Ill. 391.)

Where there are doubtful or disputed questions of fact, a new trial will not be granted. (*Lander* v. *Miles*, 3 Or. 40; *Kearney* v. *Snodgrass*, 12 Or. 311; *Williams* v. *Poppleton*, 3 Or. 139; *Gore* v. *Moses*, 1 W. T. 7; *Williams* v. *Miller & Co.* 1 W. T. 88.)

Besides, the ruling of the court in refusing or granting a new trial is not reviewable, except in cases of an abuse of discretion on the part of the trial court. (*State* v. *Wilson*, 6 Or. 428; *Hallock* v. *Portland*, 8 Or. 29; *State* v. *McDonald*, 8 Or. 113; *State* v. *Drake*, 11 Or. 396; *State* v. *Mackey*, 12 Or. 154.)

If evidence was admitted erroneously, there still can be no reversal, if the facts sought to be proven by it were clearly established by other evidence. (*Spencer* v. *R. R. Co.* 17 Wis. 488, 84 Am. Dec. 758; *Roach* v. *Menomonie*, 24 Wis. 527.)

LORD, J.—This is an action to recover damages for the destruction of the plaintiff's mill by fire, emitted from a locomotive operated by the agents of the defendant. It is enough to say that after issue was joined and a trial had, the verdict and judgment was for the plaintiff. The appeal presents several assignments of error, but we shall only notice those which were chiefly relied upon at the argument to work a reversal. It is insisted that the plaintiff, by the form of his pleading, has specified a particular engine which caused the mischief or loss, and by reason thereof has precluded himself from introducing evidence in relation to any other. The fifth paragraph of the complaint is as follows:

"That on the morning of the 30th day of April, 1888, about the hour of one o'clock A. M., the said defendant was, by its agents, servants and employes, running an engine and train of cars over its road where the same passes along the said mill, warehouse and granary of plaintiff, as aforesaid; and plaintiff avers that said engine of defendant was unskillfully and imperfectly constructed, and unskillfully, carelessly and negligently run and managed by the said defendant and by its said servants and employes, and that by reason of its said defective and improper construction and the said unskillful, careless and negligent operating and running of said engine by defendant and its said agents, servants and employes, there were emitted and ejected from said engine of defendant, opposite to and close to said mill, warehouse and granary of plaintiff, a large quantity of sparks and burning cinders and coals, and the same were then and there by said engine, by reason of its defects and careless and negligent running and operation, thrown and scattered upon and over said mill, warehouse and granary of plaintiff, and about the same, and did ignite and set fire to the same, and caused the same, with the said contents thereof, to be burned, consumed and utterly destroyed, to the great damage of the plaintiff in the sum of $39,361.72."

In its answer the defendant admits that at or about the date mentioned in said paragraph, it was, by its agents, servants and employes, running an engine and train of cars upon and over its road where the same passes plaintiff's said mill, warehouse and granary, but denies that said engine was unskillfully or improperly constructed, or unskillfully, carelessly or negligently run or managed by the defendant, and denies all other allegations of the paragraph quoted.

It will be observed that the language of the allegation is, that "an engine," at or about the time and place specified, by reason of the negligence stated, caused the destruction of the plaintiff's property, but such allegation does not undertake to identify any particular engine which occasioned that

loss of property as averred. It was "an engine," but what particular engine of the many operated by the defendant is not indicated. By what name or number it was known, whether "Annapolis" or "Alexandria," or No. 59 or 69, the allegation does not purport to specify.

The evidence of the plaintiff indicates and tends to show that he endeavored to ascertain the particular engine it was that passed at the time and place alleged, and that he was unable to find out the particular engine it was. He knew that his mill property had been destroyed, and that the company, according to his verified complaint, had negligently caused the loss; but he was unable to say, and does not undertake to say, that he can identify the particular engine complained of. The form of expression is not definite, but indefinite as to the engine, but sufficiently specific in connection with the other facts alleged as to time and place when the accident occurred to enable the defendant to ascertain with a reasonable degree of certainty what engine passed at the time alleged. A failure in this regard would have rendered the complaint liable to a motion to be made more definite. It is the duty of a plaintiff in such an action to state in his complaint as definitely as possible what train caused the injury, so that the company may be able to identify *the* engine and investigate what its condition was and the conduct of its agents and servants at such time. But the complaint is not objected to in this particular; but on the contrary, the contention is, that the allegation is so specific as to identify the particular engine, and limit the plaintiff in this proof to that engine. On its own contention, then, it may be taken for granted that the allegation is sufficiently definite to enable the defendant to ascertain the engine which caused the loss, and to prepare itself to meet the charge of negligence, but the allegation does not purport to identify the particular engine, or that the plaintiff knew what engine of the company it was, so that he could distinguish it from any other owned and operated by the defendant. The cases disclose, and the fact is, that it is not

possible often for the plaintiff to know, so that he can iden-
tify, what particular engine occasioned the destruction of his
property, but he may be able so to state other facts, as to time
and place and kind of train, etc., as to enable the defendant
to identify it with its means of knowledge, and which the
company is assumed to possess for the proper management
of its trains and the general conduct of its business.  It will
be noted that thus far the contention has been that the
plaintiff by the form of his allegation had identified a par-
ticular engine as causing the alleged destruction of his prop-
erty, and as a consequence, if this view was correct, that his
proof must be limited to that engine, and could not legally
include evidence relating to any other.

It will be seen, then, that the conclusion deduced rests on
the assumption that the allegation specified a particular
engine to which the evidence for the plaintiff must be con-
fined, but we have found as a result of our interpretation
that such is not the true purport or effect of that allegation,
and the premise failing, it results that the conclusion must
go with it.  To exclude, therefore, the evidence objected to,
it must rest on some other basis than the argument
suggested.

This brings us to the consideration of several propositions
involved in the contention of the defendant which, for con-
venience, may be thus summarized:   (1) That in actions of
this character, the burden of proof is on the plaintiff to show
negligence, and (2) that the allegation and testimony for the
plaintiff taken together so definitely, point out the partic-
ular engine which caused the mischief, that it was error to
admit evidence relating to other engines, and (3) that the
evidence for the defendant showed that the engine which
passed the property at the time alleged was number 59 and
entitled the defendant to its instruction as asked.

Upon the first proposition, the contention of counsel for
the appellant is, that the negligence of the defendant will
not be presumed from the mere fact that the fire was caused
by fire escaping from the defendant's engine.  Upon this

subject the authorities are in open and irreconcilable con-
flict, and we must choose with which we shall side for what
seem to us the better and more cogent reason. In many of
the states, the escape of fire from a passing engine whereby
property is destroyed, raises a presumption of negligence,
which shifts the burden of proof and imposes on the defend-
ant the duty to rebut such presumption by showing that it
used safe appliances and competent servants. In other
states, the mere fact that fire escaped from a passing engine
and property was destroyed, does not of itself raise a pre-
sumption of negligence without some additional evidence to
prove negligence. (See Am. & Eng. Ency. of Law, Vol. 8, pp.
9, 10 and 11, where all the cases by states are carefully col-
lated *pro* and *con* upon this subject; also Lawson's Rights,
Rem. & Pr., Vol. 3, § 1361, and notes 1 and 2.) The reason
suggested for the support of the contention for the defend-
ant is founded upon the principle that no liability can result
to another from the proper and lawful use by any person of
his property; that a railroad company has the right to use
fuel for fire to generate steam to propel its trains, and that
if it exercises such right in a lawful manner and with care
and circumspection, using the most approved appliances to
prevent escape of fire, and exercising due care and skill in
the management of its locomotives, and damages occur by
the emission of sparks, it is *damnum absque injuria*, and no
right of action arises; that negligence is the gist of the
action, and that the burden of proof is upon the plaintiff to
establish such negligence by satisfactory evidence, and that
it cannot be inferred from the simple fact of an injury or
loss of property. "Where there is neither negligence nor
folly," said WILLIAMS, C. J., "in doing a lawful act, the party
cannot be chargeable with the consequences." (*Burroughs* v.
*H. R. R. Co.* 15 Conn. 124, 38 Am. Dec. 64.) "Negligence,"
said HUBBARD, J., "cannot be inferred from the simple fact
of causing fire, for the reason that the use of fire to propel
an engine is lawful, and sparks and coals may escape, notwith-
standing all the safeguards which modern improvement has sug-

gested. (*Sheldon* v. *H. R. R. Co.* 14 N. Y. 224, 67 Am. Dec. 155.)

For the most cogent reasons in support·of this rule, we are referred to *P., etc., R. R. Co.* v. *Yeiser,* 8 Penn. St. 374, which is perhaps recognized as the leading American case on this subject. It was an action to recover damages caused by a fire set by sparks emitted from the defendant's engines while in use upon its road. The trial court instructed the jury that if they believed the fire was caused by sparks from the defendant's engines, that such fact of itself was evidence of negligence. Upon appeal to the supreme court, the instruction was held erroneous, and ROGERS, J., in delivering the opinion of the court, among other things, said: "It is well settled by many adjudicated cases, that an action does not lie for a reasonable use of one's right though it be to the injury of another. For the lawful use of his own property, a party is not answerable in damages, unless on proof of negligence." Turning, then, to the position assumed by the trial court that it "would be a matter of extreme difficulty" for the plaintiff to prove negligence, where numerous trains were passing in rapid succession, and that "it would be absolutely beyond all proof to distinguish the one which caused the injury," the learned judge proceeds: "It is said that the proof of negligence in managing the fires of any particular engine, running as the engines of this company do, at all hours of the day and night, very many trains passing both ways, and with a speed that would defy or baffle observation, would always be a matter of extreme difficulty. The fire lodged in a wood or a house might break out into a conflagration for hours after and twenty engines may have passed shortly before or after the fire was communicated, among which it would be absolutely beyond all proof to distinguish the one which caused the injury. From all this the learned judge draws the conclusion that it would be unreasonable to require proof of negligence. It may be very true that there may be some difficulty in the proof arising from the circumstances stated, and if so, they ought to be taken into consideration by the jury. But be-

cause there is some perplexity in it, arising from the manner in which the business of the road is done, that is no reason that every principle of law should be uprooted by requiring no proof of negligence whatever. We see neither reason nor justice in the position. The plaintiff in this suit declares for negligence—negligence, according to his own showing, is the gist of the action, and yet he has been allowed to recover damages without any proof of negligence, or any attempt even to prove it."

On the other hand, the opposite rule that proof of the escape of fire from a passing engine establishes a *prima facie* case of negligence in the construction and management of such engine and casts on the defendant the burden to show proper care and to rebut the presumption, is sustained by a cogency of reasoning and a sense of justice and fair dealing difficult to answer and overcome. It is based on the idea that the means of rebutting the presumption is entirely in the power of the defendant, that the plaintiff cannot be expected to know, much less to prove, that the engine was defective in its appliances or construction, or that it was negligently managed on the occasion of the destruction of his property, and that in such case, to impose the *onus* on the plaintiff to prove some positive act of negligence or circumstances tending to show a want of due care or skill, would, in many instances, be equivalent to a practical denial of justice. It is not claimed that the presumption is not very satisfactory or strong, but it is indulged merely to compel the company to show that it had performed its duty in this particular. (*Spaulding* v. *Railroad Company,* 30 Wis. 110, 11 Am. Rep. 550.) But its effect is to shift the burden of proof upon the defendant where it properly belongs. Such proof cannot be expected from a stranger. "The engines are all alike to him. He does not know them apart, nor does he know when any particular engine is used, or who manages it. And when it passes at the rate of fifteen or twenty miles an hour, he could not see enough of it to afterwards identify it. What the engine is, and how it is managed, is peculiarly

within the knowledge of the company." (*Atch. R. R. Co.* v. *Stanford*, 12 Kan. 354, 15 Am. Rep. 362.) The reason of the rule is founded in the necessity of the case.

It has been thus forcibly stated by Judge THOMPSON: "All information as to the construction and working of its engines, and of the particular one in fault, is in possession of the company, as are also the means of rebutting the charge of negligence entirely in its power. An outsider can hardly be expected to prove that in the construction of the engine, or in the use of it at the time the injury occurred, the company was guilty of negligence. He can only prove that his property was destroyed by one of the company's locomotives, and having done this, it is but proper to call on the defendant to show that he was not negligent, that he employed careful and competent servants, and that he had used the most improved appliances to prevent the escape of fire from his engine." (1 Thompson on Negligence, 153, sub. 3.) "The reason given," said Mr. Chief Justice DIXON, "for requiring the companies to show that this duty has been performed on their part, are, that agents and employes of the road know, or are at least bound to know, that the engine is properly equipped to prevent fire from escaping, and that they know whether any mechanical contrivances were employed for that purpose, and if so, what was their character; whilst on the other hand, persons not connected with the road, and who only see trains passing at a high rate of speed, have no such means of information, and the same is inaccessible to and cannot be obtained by them without great trouble and expense." (*Spaulding* v. *Railroad Co.* 30 Wis. 110, 11 Am. Rep. 550.) In the nature of things the plaintiff cannot have access to the engine for the purpose of ascertaining if it is properly constructed, and it is wholly impossible for him to prove how the agents and employes of the company were operating the engine when the property was destroyed. The difficulty is inherent, and to hold otherwise would operate often as a denial of justice. As the facts are peculiarly within the knowledge of the company, it is no hardship to

devolve upon it the *onus* of proving the proper construction of the engine and its careful management. The case in hand illustrates the justice of such a rule. The plaintiff was not able even to ascertain the particular engine which passed at the time alleged and caused the destruction of his property. He wrote to the agent of the company defendant, but failed to elicit an answer; and when he sought personally to ascertain the fact, he was treated as an intruder, and utterly failed to obtain the information desired. How then could it be expected that he should be able to tell, still less to prove, that the engine was not properly constructed, or used improper appliances, or that it was not operated with skill and care by the agents of the defendant. He knew his property had been destroyed, and that it had been caused by sparks emitted from the engine of the defendant company, and when he had proven this much it was no hardship to require the defendant to show that its engine was not the cause.

It is not disputed that railroad companies have not the legal right to use fire to generate steam to propel their locomotives, but they have no right to scatter fire along their track, and if they do so, and the property of others contiguous thereto is destroyed, in the absence of explanation, they cannot avoid the imputation of negligence. In this view it results that we regard the rule—exception, it may be, to the general rule—holding that property destroyed by fire caused from a passing engine raises a presumption of negligence which shifts the burden of proof as founded in the sounder reason and better adapted to attain the ends of justice.

It is next insisted that under the pleading and proof in the case, that the particular engine that hauled the train at the time alleged the property was destroyed by it, although not identified as to its number, was so definitely pointed ou as, in fact, to make its identification complete, and evidence in relation to fires caused by other engine and subsequent thereto was inadmissible and

case must be considered from the standpoint of the plaintiff and the proof he submitted. The allegation in the pleading does not identify the engine that caused the mischief; and the testimony for the plaintiff tending to show that the fire was caused by an engine of the defendant on the night alleged does not indicate what engine it was, or from which it would be possible to identify or distinguish it from other engines of the defendant company. No one can read that testimony and say what particular engine from any other owned and operated by the defendant caused the destruction of his property. He had furnished the data by which the defendant might be able to identify it, but what the defendant might be able to prove toward its identification could not help him. He was bound to proceed in the first instance with evidence to establish his allegations, and if he failed to submit enough the defendant would move for a non-suit, before it submitted any evidence in the case, much less to identify the engine which caused the fire.

The plaintiff introduced evidence tending to show that the fire which destroyed his property was caused by sparks emitted from an engine of the defendant company, but what particular engine he did not know, nor does the evidence disclose, for he had been unable to ascertain this fact and could not make proof of its identification. He showed that an engine passed and scattered fire, and then showed that other engines of the same general appearances scattered fire in large quantities and to a great distance and set other fires along the track prior and subsequent thereto. The pleading and testimony for the plaintiff does not identify the engine which caused the mischief, and there was no error in admitting the testimony in relation to other engines. A like argument was urged in *Annapolis R. R. Co.* v. *Gault,* 39 Md. 124. Counsel for the appellant contended "that the declaration specially averred that *one* of the defendant's locomotives ... negligently managed *on a particular day named* that ... ks and cinders *from said locomotive* set fire to the ... remises," etc. This specific averment was

explicitly denied, and the plaintiff himself in his testimony
expressly proves that if the fire was caused at all by any
locomotive of the company, it was caused by the locomotive
" Annapolis," which was drawing the freight train towards
the junction on the day designated. The issue then before
the jury was, whether the defendant on *that occasion* " so neg-
ligently managed " the locomotive " Annapolis " that sparks
and cinders from that locomotive set fire to the plaintiff's
premises. There was no proof that the " Annapolis " had
thrown out such sparks on the occasion referred to, or any
other. But that other engines, on other occasions, had set
fire to leaves on other people's property, was surely irrele-
vant to the issue.

Here the contention was that the allegation and testimony
of the plaintiff identified the particular engine and limited
the proof to that engine, but the court held otherwise, and
decided that the plaintiff might show that within a week
before the fire in question the engines of defendant, in pass-
ing, had scattered large sparks which were capable of setting
fire to combustible materials along the road, and that fre-
quent fires, occasioned by such sparks, had been put out
within that time. The argument there was, as here, that
according to the allegation and testimony for the plaintiff,
if the fire was caused by an engine of the defendant, it was
caused by number 59, which the defendant sought to show
hauled the train on the night designated, but the evidence
offered and submitted by the plaintiff does not show it was
number 59 which threw out sparks on the occasion alleged,
or any other number or name, or what particular engine it
was, except that it was *an engine* of the defendant company.
" The plaintiff is not bound," says Mr. LAWSON, " to prove
which particular locomotive caused the fire." (3 Lawson's
Rights, Rem. & Pr. § 1361.)

Said BRADY, J.: " The further objection that proof of
prior and subsequent emission of sparks by the defendant's
engines, or some of them, was improperly permitted, is
untenable. Such evidence has been declared to be admis-

XX OR.—2.

sible in actions of this class. (11 Hun, 184, citing *Sheldon* v. *Hudson R. R. Co.* 4 Kern. 218, 67 Am. Dec. 155; *Field* v. *N. Y. Cent. R. R. Co.* 32 N. Y. 339; *Webb* v. *Railroad Co.* 49 N. Y. 420, 10 Am. Rep. 389.)

The supreme court of the United States has ruled in the same way. In *Grand Trunk R. R. Co.* v. *Richardson*, 91 U. S. 454, the plaintiff was allowed to prove that at various times during the same summer, before the fire occurred, some of the defendant's locomotives scattered fire when going past the property destroyed, without showing that either of the locomotives which it was claimed caused the fire was among the number, and without showing that the former locomotives were similar in their make, state of repair or management, to the latter ones. Mr. Justice STRONG, in delivering the opinion of the court, said: " The question, therefore, is whether it tended in any degree to show that the burning of the bridge and consequent destruction of plaintiff's property was caused by any of defendant's locomotives. The question has often been considered by the courts in this country and in England, and such evidence has, we think, been generally held admissible, as tending to prove the possibility and a consequent probability that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. (*Pigott* v. *R. R. Co.* 3 Mg. & S. 229; *Sheldon* v. *R. R. Co.* 14 N. Y. 218, 67 Am. Dec. 155; *Cleaveland* v. *R. R. Co.* 42 Vt. 449; *R. R. Co.* v. *McClelland*, 42 Ill. 358; *Smith* v. *R. R. Co.* 10 R. I. 22; *Longbaugh* v. *R. R. Co.* 9 Nev. 271.) There are, it is true, some cases that seem to assert the opposite rule. It is, of course, indirect evidence if it be evidence at all. In this case it was proved that engines run by these defendants had crossed the bridge not long before it took fire. The particular engines are not identified, but their crossing raised at least some probability, in the absence of proof of any other known cause, that they caused the fire. And it seems to us that under the circumstances, the probability was strengthened by the fact that some engines of the same defendants at other times during the same season, had scattered fire during their passage."

We are unable, therefore, to sustain this assignment as error. It is next claimed that the evidence for the defendant showed that the engine which passed the property on the night referred to was number 59 and entitled the defendant to the instruction asked without modification and for some other reasons to have the verdict set aside. To support the proposition involved, the argument assumes (1) that the evidence for the defendant indisputably identifies the engine that did the mischief as number 59, and (2) that it was properly constructed and carefully managed on that occasion; and (3) if this is so, that the presumption of negligence raised by the simple fact of injury from the escape of fire from a passing engine is rebutted and overcome, and the plaintiff cannot recover, and the court must so declare as a matter of law. The consideration of the points involved will be aided by understanding the attitude of the case. In addition to the presumption raised by the mere fact of an injury by fire from a passing engine, there was evidence introduced by the plaintiff tending to show whatever engine it was that run by the mill on the night alleged, that it was running at a high rate of speed, and was emitting an unusually large quantity of sparks, and that in view of the proximity of the mill and granary to the railroad track, there was a want of ordinary care in not observing proper precautions to prevent fires to property so exposed along its track. The case made by the plaintiff did not stand simply on a presumption of negligence, raised by the mere fact of injury from the escape of fire, but was strengthened by these independent facts and circumstances which of themselves afforded a legitimate inference that the agents or employes in charge of the engine were not exercising proper care and caution in operating it, considering the danger to the mill property situated near the track. Assuming then, for the purposes of the case, that the defendant did introduce evidence tending to show that the engine in use that night was number 59, and that it was properly constructed and supplied with the latest modern safeguards,

and carefully managed, in order to rebut the presumption raised by the mere fact of injury from the escape of fire, yet as there was other evidence for the plaintiff tending to show that the engine was carelessly managed on that occasion, the evidence was in conflict on this point, and when the facts are disputed, the question is for the jury, and not for the court; but there is no evidence to show that the engine was carefully managed on that night; all that was offered on this point was, that the engineer who operated the engine on that occasion was recognized as a competent and skillful engineer, not that he carefully operated it at the time alleged.

An engineer may have the reputation of being careful and skillful, and still on the particular occasion have managed his engine carelessly and negligently. Besides, the evidence for the defendant indicates that the engineer, though competent and skillful, was inclined to be of a daring and reckless spirit, and, from the expressions used in describing him, that he was not always careful and prudent. So that if it be conceded there was evidence for the defendant (which there was not) that its engine was managed with proper care and caution on that occasion, such evidence is disputed and controverted by the evidence for the plaintiff, and reserves the case for the jury, and their verdict is conclusive upon us and cannot be set aside; but more, as the mere fact of injury from the escape of fire from a passing engine raises a presumption of careless management as well as improper construction and the use of improper appliances, when so alleged and charged, it follows that, unless the evidence for the defendant shows that the engine was carefully managed at the time, as well as properly constructed and the use of proper appliances, such presumption is not rebutted and overcome. It is when the presumption raised is repelled by proof of proper construction, and the use of proper appliances, and careful management, that the plaintiff cannot maintain the action without making proof of other negligence, or want of ordinary care. But what is the proof of the iden-

tity of the engine as number 59? There is the register upon which an entry was made from the train-book not produced. But it seems to have been the subject of some change, which, it is argued, casts suspicion on it, and indicates that it had been tampered with. Referring to it, the witness testifies that "he did not know how the figure came to be changed," and that he "did not know, outside this book, what train left Umatilla that night."

The only man on the engine that night who testified was the fireman (the engineer was dead), and he was inclined to think that the engine was number 63 until he was "buzzed" about it. Among other things he testified: "We were running on pretty fast time. Don't know whether we were on time at Echo or not. I have no recollection of that particular trip. There was no reason I should notice it (engine) more than any other. My impression is that it was engine 59 we ran on that night. I am only sure of it by circumstantial evidence, seeing the register in the call-book at the office at La Grande. It ran in my mind that it was engine 63 or 59. I was kinder thinking it was 63, and might have talked so to others. Everybody was buzzing me about that engine I was running on that night."

Considering that the register was only a copy from the original entry book not produced in evidence and the condition it was in unexplained, together with the doubt and uncertainty in the mind of the only witness whom so many were buzzing, and it can hardly be said that the identity of the engine was indubitably established. It is quite probable that the proof failed to satisfy the jury of the identity of the engine used on the night the property was destroyed. The credibility of the witnesses and the weight of the evidence is for the jury and the fact is for them to decide. And, unless the evidence was sufficient to satisfy them that the engine in use that night was number 59, the defendant has no evidence of the condition of the engine that caused the fire.

Turning now to the instructions, it is enough to say that

the one to the effect that the mere fact of injury from the
escape of fire from a passing engine does not raise a pre-
sumption of negligence without additional evidence of negli-
gence, was error, as already shown, but was not prejudicial
error to the defendant; nor is any complaint made on this
ground; but the contention was that this instruction, taken
in connection with another given, to which no exception is
taken or objection is made, authorized the court to set aside
the verdict, and that it was its duty so to do. Upon the
assumption claimed, the criticism seems just and the con-
clusion logical; but the view already expressed is in con-
flict with that assumption, and the facts show a case for
the decision of a jury. The trouble with the instructions
asked and modified is, that it assumes that engine No. 59
was identified, and asserts consequences on that hypothesis.
If it was identified, then it was for the jury to consider all
the facts and circumstances and decide whether the alleged
negligence was made out; but if it was not identified, and
some other engine of the company did the mischief, then
the defendant had no proof of the particular engine that
caused the fire, and the jury upon the facts could not have
found for the defendant. Besides, it does not follow, if the
jury should believe that the fire was caused otherwise than
by engine No. 59, that the verdict should be for the defend-
ant, for they might believe that the particular engine the
defendant. introduced evidence tending to show was No. 59
did not cause the fire, but that it was communicated by
some other engine of the company.

Upon the whole we think the judgment must be affirmed.

On rehearing.

LORD, J.—There is no positive testimony as to the fact of
ignition. The testimony for the plaintiff did not show
directly that the fire which burned his mill was caused by
the engine which hauled the train on the night alleged, but
it did tend to show a state of facts from which the inference
might be drawn that the fire which destroyed his property
was communicated from that engine and caused his loss. It

was shown about the time alleged on the night of the fire that a passenger train passed the mill, and it was observed by some persons in the vicinity that large quantities of sparks were emitted from the engine and flew over in the direction of the mill, which, taken in connection with other evidence tending to show the improbability of the fire having originated in any other way, raised a strong inference that the firing of the mill was caused by sparks from the engine that hauled that train. What particular engine this was, the evidence does not disclose, nor was the plaintiff able to ascertain, to make proof of its identification from other engines of the company. But to strengthen the inference that the burning of his mill originated in sparks from this engine, and to show habitual negligence of the officers and agents of the railroad company, he introduced evidence to show that other engines of like appearance and construction frequently scattered fire in large quantities and set other fires along the track, prior and subsequent to the burning complained of. Was this error?

The case shows that when the fire started no one was present, and the object of his evidence was to account for its origin. He could show that sparks escaped from a passing engine of the company on that night under circumstances which raised an inference that it caused the destruction of his property. What particular engine this was, he could not identify so as to distinguish it from any other engine of like appearance and construction used by the company, and consequently he could not make any direct proof of defects in the construction or negligence in its management. On account of this difficulty of identifying a passing engine, especially at night-time, so as to make direct proof of such negligence, and also for the reason, as stated by Mr. Thompson, that the business of running railroad trains supposes a unity of management and a general similarity in the construction of the engines, the admission of evidence as to other and distinct fires from the one alleged to have caused the injury, is permitted. Nor is it requisite

that the testimony must also show that the engine which it is claimed caused the fire was one of those which had previously or subsequently scattered fire along its track; but it is enough, as was shown, that it was similar in appearance and construction, and under the same general management. Hence it is quite generally held that evidence that sparks were frequently ejected from passing engines, causing fires along its track on other occasions, is relevant and competent to show habitual negligence, and to strengthen and sustain the inference that the fire originated from the cause alleged. As the plaintiff must proceed with his evidence in the first instance, the fact that the defendant may be able to prove the identity of the engine cannot have the effect to make the admission of such evidence error. It may be granted that the admissibility of such evidence trenches somewhat on the general doctrine regarding relevancy in actions of this character, but the authorities indicate that its allowance is justified by the necessities of the case. As the testimony for the plaintiff failed to identify the engine which caused the destruction of his property, did the evidence for the defendant, supplementing the evidence for the plaintiff, show conclusively that the engine which hauled the train on that night was identified as No. 59? No question is raised but what the defendant sought to show that it was engine No. 59; but was the evidence in this regard of such undisputed and conclusive character as would authorize a court to withdraw its consideration from the jury, as to whether it was identified or not, or what is the equivalent, to assume by its instruction that the engine was identified as number 59? The argument for the motion assumes that it was, and we must briefly consider the evidence to test its soundness.

After the evidence for the plaintiff, it devolved upon the defendant to identify the engine, and to show that it was properly constructed, furnished with safe appliances, and carefully managed on that occasion, to overcome the *prima facie* case made. Without more ado, it may be admitted, for present purposes, that if the engine in question was iden-

tified by the evidence as number 59, that it further showed that it was properly constructed and furnished with the best appliances for safety, and that it was in charge of an engineer recognized by his class as competent and skillful, but it omits to show that he carefully operated and managed it on that occasion. Was the identity of the engine so completely established as number 59 as would be error to submit that question to a jury? Mr. Warlick, who was a witness for the defendant, testified that on the night in question he " was firing" the engine; that " we were running on pretty fast time. Don't know whether we were on time at Echo or not. I have no recollection of that particular trip; there is no reason why I should notice it more than any other. My impression is that it was engine 59 we ran on that night. *I am only conscious of it by circumstantial evidence, seeing the register in the call-book at La Grande.* It ran in my mind that it was engine 63 or 59. I was kinder thinking it was 63, and might have talked so to others; 63 was an engine that had never stopped up on us. Everybody had been buzzing me about that engine I was running on that night. The conductor was speaking to me about it the other night," etc.

It seems to me that the fair inference from the testimony of this witness is, that the impression which he had that the engine run on that night was number 59 was derived solely from the register; that in his own mind there was some conflict as to whether it was 63 or 59, with the stronger and prevailing recollection in favor of 63—"kinder thinking it was 63"—which is corroborated by his conversation that he had so talked to others that it was 63. To say the least, the legitimate effect of his evidence is to create a ground of doubt as to the identity of the engine, and when such is the case, nothing is more elementary than the question is for the decision of the jury and not for the court. There is no other evidence of the identification of the engine as number 59, except from the entry in the register, and Mr. Robbins and Mr. Stevens base their testimony

of its identity upon its record.    Nor is there any claim
outside this book, that they can testify to the identity of the
engine which hauled the train on that night.    The train-
book in which the original entries were made by the con-
ductors was not produced, but the conductor testified that
the record in the registry was made from it.    There seems
to have been some alteration or change in some figure in
the registry; but as no explanation is vouchsafed, its pur-
port we are unable to determine.    On one side it is claimed
that the change is immaterial and in no way affects the
question involved; while on the other, it is as strenuously
insisted that it is of such a nature as to cast suspicion on
the register and to destroy its value as record evidence.
Whatever the change was, Mr. Robbins testified that he did
not know how it "came to be changed."

Between these conflicting claims as to the value of this
record evidence, we have no means of determining, or if we
had, no authority to determine which is correct, and cannot,
therefore, express any opinion which shall reflect on any one;
but the jury, the tribunal constituted to try such facts, under
the guidance of the court, enjoyed full opportunities to see
and inspect the register, to see and hear the testimony of the
witnesses, and to observe and note all the surrounding facts
and circumstances, which specially fitted them, as the law
intends, to determine the right of the matter.

Upon such a state of facts the court has no right to inter-
vene.    When a court is asked to declare a fact established
as a matter of law, the evidence ought to so completely and
irrefutably establish the fact as to free the mind from all
doubt and hesitation.    A party on whom rests the burden
of proof is bound to prove each circumstance which is
essential to the conclusion, and in such case proof means
anything which serves to convince the mind of the truth or
falsehood of the fact or proposition.    The identity of the
engine is foremost among the facts essential to be proven by
the defendant to satisfy the minds of the jurors it was No.

59 in order to follow it with the necessary evidence of its proper construction and careful management.

Looking to the evidence of the fireman, aided by the proof of the record and the testimony of the witnesses in respect to it, it may be, despite all criticism, that it ought to have convinced the jury of the identity of the engine, and yet that is no reason that the court should invade their province and withdraw the question from their consideration. To do that the evidence must not only be undisputed, but it must be free from all doubt and uncertainty.

Now, if we turn to the evidence of the fireman, his predominant impression was that the engine was number 63, or, to say the least, his mind was involved in doubt and vibrating between 63 and 59; or, if we turn to the register, its credibility is attacked as a record and depends for its weight and value upon the credibility of the witnesses who testified in respect to it; and in such case, when the fact is involved in doubt, and depends upon the credibility of witnesses, it is plain law that the question is for the decision of the jury and not for the court.

To conclude, the witnesses on this question were the agents and employes of the company, and the jury were the exclusive judges of the weight and credibility of their testimony under the circumstances. It was for the jury to say, and not the court, that the engine was number 59, as well as whether it was properly constructed, furnished with safe appliances and carefully managed on that occasion. As the amendment to the instruction asked indicates, the trial court regarded the evidence of the identity of the engine as number 59 not wholly free from doubt, and more properly to be submitted to the jury to resolve such doubts than to dispose of it on his own responsibility; and in so doing, upon the facts as disclosed by this record, we are not prepared to say there was error.