### RALSTON *v.* SHARON *et al.*

*(Circuit Court, N. D. California. July 11, 1892.)*

EQUITY—ANCILLARY JURISDICTION—SETTING ASIDE FORMER DECREE FOR FRAUD.
  In a suit pending in a United States circuit court a compromise was effected, in pursuance of which defendant paid plaintiff a certain sum, and a final decree was entered by stipulation dismissing plaintiff's bill. Defendant subsequently executed a trust deed of all his property to N. and S. for the use and benefit of his heirs, and thereafter died; after which plaintiff filed a bill in the same court against N. and S., to have the stipulation and decree of dismissal set aside for fraud. *Held* that, it being alleged in the bill that all the parties to the suit were citizens of the state, the court had no jurisdiction, as defendants not having been parties to the former suit, and not being the personal representatives of the former defendant, and the property which was the subject of the former contest not being any longer subject to the order of the court, the bill was an original one, not dependent upon or ancillary to the original suit, and a state court of equity could give full relief.

In Equity. Action by Lizzie F. Ralston against F. W. Sharon and F. G. Newlands, trustees, etc. Judgment for defendants.

*Nougues & Nougues,* for complainant.

*William F. Herrin,* (*James M. Allen* and *H. L. Gear,* of counsel,) for defendants.

HAWLEY, District Judge. This is a bill in equity brought against the defendants, as trustees of the property of the estate of William Sharon, deceased, in trust for the benefit of his heirs. The bill covers 983 pages of typewritten matter. The complainant is the widow, and sole legatee and devisee, of W. C. Ralston, deceased. The complainant and defendants are alleged to be citizens of the state of California. The defendants demur to the bill upon three distinct grounds: (1) That the court has no jurisdiction of the subject-matter of the suit; (2) that the facts stated in the bill do not justify any relief against the defendants; (3) that the plaintiff's demand is barred by her laches.

The facts set forth in the bill, in so far as is necessary to an understanding of the questions raised by the first ground of the demurrer, may be summarized in a general way, in a comparatively brief manner. It appears that on the 27th of August, 1875, W. C. Ralston made, executed, and delivered to William Sharon a deed of all his property, in trust to collect and receive the rents, issues, and profits thereof, and to sell and dispose of the same upon such terms and conditions as he might deem best, and that the proceeds arising therefrom should be applied to such uses and purposes as the said William Sharon might deem to be best for the joint and several interests of said William Sharon and W. C. Ralston; that on the same day, after the execution of this trust deed, the said W. C. Ralston died; that thereupon the said William Sharon entered into the possession of all the real estate and personal property of W. C. Ralston, deceased; that the will of W. C. Ralston was regularly probated; that J. D. Fry and A. J. Ralston were named as executors under the will, and qualified as such; that they allowed William Sharon to retain control of, and remain in the possession of, all the property, real and personal, of the estate of W. C. Ralston; that during the remaining portion of the year 1875, and a portion of the year 1876, the said William Sharon was engaged in selling and disposing of, and otherwise dealing with, the property which was conveyed to him by W. C. Ralston, and settling said Ralston's liabilities; that complainant, at divers times in the year 1876, without any consideration, at the request of William Sharon, made, executed, and delivered to him certain deeds of the property of the estate of her deceased husband; that in January, 1876, at the request and upon the advice of William Sharon, she executed and delivered a general power of attorney to A. J. Ralston and W. H. L. Barnes, authorizing them to act for her in all matters pertaining to the estate of her husband; that in September, 1876, William Sharon represented to her that the liabilities of her husband were greatly in excess of the value of his property; that it was very doubtful if it would ever increase in value; that he would lose at least $2,000,000 by reason of his efforts to pay the debts of her husband; that he presented to her a written statement of all the assets and liabilities of the estate; that he

represented that he was without any ready money, but that he would be willing to give her his notes for $50,000 if she would execute and deliver to him a full release and discharge of all claims, legal and equitable, and an approval of his action in relation to the property received by him from her husband's estate; that he would take the property for the debts the estate owed him; that, unless she accepted this offer, she would never realize anything from the estate; that her executors and attorneys in fact advised her to accept the offer; that they represented to her that they had examined the statement prepared by William Sharon, and also examined his books and papers, and that Sharon had lost large sums of money in the settlement of her husband's liabilities; that, relying upon the truth of all these representations, she, on the 26th day of October, 1876, executed an instrument of release and approval, which reads as follows:

"Whereas, William Sharon received from the late William C. Ralston, deceased, in his lifetime, and on the 27th day of August, one thousand eight hundred and seventy-five, an instrument in writing bearing date that day, wherein the said William C. Ralston gave, granted, conveyed, and transferred unto the said William Sharon, his heirs and assigns, all and singular his property, both real and personal, and wheresoever situated, in trust to collect and receive the rents, increase, and profits thereof, and every part thereof, and to apply the same and the proceeds of all said property to such uses and purposes as said Sharon might deem best for their joint and several interests; and whereas, said William C. Ralston, deceased, left a last will and testament, which was duly admitted to probate in the probate court of the city and county of San Francisco, state of California, on the 23d day of November, one thousand eight hundred and seventy-five, and on the same day letters testamentary were issued to J. D. Fry and A. J. Ralston; and whereas, Lizzie F. Ralston, the widow of said William C. Ralston, deceased, is the sole legatee named in said last will and testament; and whereas, pursuant to the consent and acquiescence of said Lizzie F. Ralston, and said J. D. Fry and A. J. Ralston, executors of said last will and testament, acting by and under her request and direction, the said William Sharon has proceeded to execute the powers conferred upon him in and by said instrument first hereinabove mentioned, and has paid and compromised the debts and liabilities of said deceased and of said estate, and has disposed of most of the said property so conveyed to him, and his doings, dealings, and transactions in respect to the same have been all and singular known to, and approved, ratified, and confirmed by, the said Lizzie F. Ralston personally, as well as by her attorneys in fact, A. J. Ralston and W. H. L. Barnes; and whereas, said William Sharon is willing and has offered to take the property and assets of said estate remaining unsold or undisposed of by him in satisfaction of his claims and demands against said Ralston in his lifetime, or against his estate since his death, and, further, is willing and has offered to pay the said Lizzie F. Ralston, his widow and sole legatee under the said last will and testament, the sum of fifty thousand dollars, in gold coin, in consideration of her ratification and approval, as aforesaid, of his doings, dealings, and transactions in the matter of said conveyance, and with the property referred to therein, all of which is accepted and agreed to by the said Lizzie F. Ralston, and her said attorneys in fact, after full and complete knowledge and opportunity of knowledge concerning the facts in the case:

"Now, this indenture witnesseth that the said Lizzie F. Ralston, individually and by her attorneys in fact, A. J. Ralston and W. H. L. Barnes, in

consideration of the sum of fifty thousand dollars ($50,000) gold coin of the United States, secured to be paid her by the promissory note or notes of said Sharon of even date herewith, and bearing interest until paid at the rate of seven (7) per cent. per annum, payable monthly, receipt whereof is hereby acknowledged, does hereby ratify, confirm, and approve all that William Sharon has done, or caused to be done, under said conveyance and assignment first hereinabove mentioned, and does hereby give, grant, and convey to the said William Sharon all her right, title, and interest, be the same more or less, and however arising, in and to the estate and property conveyed to said Sharon by said conveyance and assignment first hereinabove mentioned, or which but for said conveyance and assignment, or in any event, might have been the property of her deceased husband's estate, and devised and bequeathed to her by his will, and subject to administration by his executors aforesaid. It being the intent of this instrument to ratify and confirm, on the part of said Lizzie F. Ralston, the said conveyance and assignment of her husband to said Sharon, to approve and accept all that has been done or caused to be done by said Sharon under it, and to release and convey to said Sharon all her interest in the estate of her deceased husband, of whatever name or nature the same may be, and wheresoever situated, to the end that said matters may be finally closed and settled; and this shall be a full release and discharge of said Sharon from any and every claim of her, the said Lizzie F. Ralston, legal or equitable, arising out of or connected with the matters hereinabove referred to or intended so to be. In witness whereof, the said Lizzie F. Ralston, personally, and the said A. J. Ralston and William H. L. Barnes, her attorneys in fact, have hereunto set their hands and seals this twenty-sixth day of October, A. D. one thousand eight hundred and seventy-six.

"LIZZIE F. RALSTON. [Seal.]
"LIZZIE F. RALSTON,
"By W. H. L. BARNES, her Attorney in Fact. [Seal.]
"LIZZIE F. RALSTON,
"By A. J. RALSTON, her Attorney in Fact. [Seal.]
"Signed, sealed, and delivered in the presence of J. MASON.
"[Duly acknowledged.]"

On the 7th day of October, 1880, this complainant commenced an action in the superior court of the city and county of San Francisco, state of California, against William Sharon for an accounting of the estate of her husband, to set aside the written instrument ratifying and approving the acts of said Sharon, and releasing her interests in her husband's estate, etc.; that A. D. Sharon was made a party defendant in said action, upon the ground that he had, or claimed to have, an interest in certain real estate involved in said suit. The bill in that action, after setting forth in detail all the facts herein briefly referred to, alleged the subsequent discovery by complainant of the absolute falsity of all of said William Sharon's representations; alleged that her husband's estate was of a much greater value; that his liabilities were much less than the value of his property; that the statement of Sharon was false and fraudulent in every particular; that it did not include all the property belonging to the Ralston estate; that it magnified Ralston's debts, and charged him with liabilities that did not exist; that, instead of Ralston's estate being insolvent, it was worth several millions of dollars after the payment of all his just debts and liabilities. The bill set forth in detail, and at great length, all the property which Ralston, at the time of his

death, was interested in, and which afterwards came into the hands of the said William Sharon under the deeds and instruments heretofore mentioned, and specified with great particularity of detail all the facts and circumstances showing the utter falsity of all the representations made by Sharon. Said action was, upon the petition of William Sharon, on the 24th of November, 1880, removed to this court upon the ground that defendant William Sharon was a citizen and resident of the state of Nevada, and that complainant was a citizen and resident of the state of California. On the 28th of January, 1882, William Sharon filed an answer to the bill. The complainant filed exceptions thereto, and, pending the hearing of said exceptions, the following stipulation was filed in the cause:

"[Title of court and cause.]
"In this case it is hereby stipulated that the exceptions heretofore filed by the plaintiff to the answer of the defendant William Sharon may be, and the same is hereby, withdrawn; that, the plaintiff hereby declining to make replication to the answer of the defendant William Sharon, or to the answer of the defendant Alexander D. Sharon, the defendant William Sharon may either move for judgment upon the answer taken *pro confesso*, for want of replication, or proceed to hearing upon this proof, as he may be advised. The defendant Alexander D. Sharon may either move for judgment upon the answer taken *pro confesso*, for want of replication, or proceed to a hearing upon his proof, as he may be advised. Any judgments rendered in this action shall be final, the plaintiff hereby waiving all right of reviewing or appealing from the same in any manner. Any judgments in favor of the defendants to be without costs as against the plaintiff.
"LIZZIE F. RALSTON, Plaintiff.
"JOSEPH M. NOUGUES, Atty. for Pl't'ff.
"Witness to signature of Lizzie F. Ralston: J. D. FRY."

The stipulation was the result of a compromise by which complainant received from William Sharon $250,000. Thereafter, on the 12th of October, 1882, a final decree, in pursuance of this stipulation, was entered dismissing the bill, without costs to complainant. The bill in the present action was filed in this court October 11, 1887. It prays that the stipulation for the decree and the decree of dismissal be set aside and declared fraudulent and void; that an account may be taken of all the real and personal estate of W. C. Ralston under the deed of trust of date August 27, 1875; that an account of all the copartnership transactions between William Sharon and W. C. Ralston be taken, etc. The bill alleges that William Sharon died November 15, 1885, leaving no estate out of which complainant could satisfy her claim, and alleges that, prior to his death, to wit, on the 4th of November, 1885, the said William Sharon executed and delivered to the defendants in this action, F. G. Newlands and F. W. Sharon, a deed in trust as trustees, of "all the property, whether real, personal, or mixed, of whatsoever nature, in the states of California, Nevada, Ohio, Missouri, Illinois, the District of Columbia, and wheresoever else situate, now owned by the said William Sharon, or to which he may be entitled," in trust for the use and benefit of the heirs of said William Sharon. The deed of trust is set out at length

in the bill. The bill further alleges that the defendants, F. W. Sharon and F. G. Newlands, accepted and hold the office of trustees of the estate of said William Sharon; that under and by virtue of said trust deed "said William Sharon transferred to and said defendants received possession of all the estate of said William C. Ralston, real, personal, or mixed," of whatever nature and wherever situate, "which was transferred to said William Sharon by said W. C. Ralston, and which said William Sharon received as trustee of the estate of William C. Ralston, under the deed of trust executed on the 27th day of August, 1875;" that "the sum of money and the value of the property involved in this action is of the value of five millions of dollars and over."

Upon the facts stated in the bill, has this court any jurisdiction? Is the suit an original independent bill in equity, or is it dependent upon, or ancillary to, the original suit brought by Mrs. Ralston against William Sharon? A bill in equity constitutes an original and independent proceeding when it calls for the investigation of a new case, arising upon new facts, although it may have relation to the validity of an existing judgment or decree, and of the complainant's rights to claim any benefit by reason thereof, or to be relieved therefrom, as the case may be. In such cases it is now well settled that courts of equity have the unquestioned power to give relief against judgments or decrees which were obtained by fraud, notwithstanding the fact that the suit, as instituted, has relation to frauds alleged to have been committed in a former suit in courts of another jurisdiction, state or national. *Dobson* v. *Pearce*, 12 N. Y. 165; *Pearce* v. *Olney*, 20 Conn. 544; *Doughty* v. *Doughty*, 27 N. J. Eq. 318; *Dringer* v. *Railway*, 42 N. J. Eq. 573, 8 Atl. Rep. 811; *Yeatman* v. *Bradford*, 44 Fed. Rep. 537; *Daniels* v. *Benedict*, 50 Fed. Rep. 353; *Sohlgard* v. *Kennedy*, 1 McCrary, 293, 2 Fed. Rep. 295; *Gaines* v. *Fuentes*, 92 U. S. 10; *Barrow* v. *Hunton*, 99 U. S. 80; *Johnson* v. *Waters*, 111 U. S. 667, 4 Sup. Ct. Rep. 619; *Arrowsmith* v. *Gleason*, 129 U. S. 99, 9 Sup. Ct. Rep. 237; *Marshall* v. *Holmes*, 141 U. S. 597, 12 Sup. Ct. Rep. 62.

A state court of equity, having jurisdiction of the parties and of the subject-matter of the suit, could make any decree in the premises that the facts would warrant, and that equity would sanction, and could grant just as much relief as this court could; and such actions, having relation to former judgments and decrees in a state court, can be maintained in the circuit courts of the United States if the parties to the action are citizens of different states. In such cases, as was said by the supreme court in *Johnson* v. *Waters*, 111 U. S. 667, 4 Sup. Ct. Rep. 619:

"The court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court, but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it."

In *Arrowsmith* v. *Gleason*, 129 U. S. 98–101, 9 Sup. Ct. 237, this question of jurisdiction is elaborately discussed and very clearly stated. The court, among other things, said:

"While there are general expressions in some cases apparently asserting a contrary doctrine, the later decisions of this court show that the proper circuit court of the United States may, without controlling, supervising, or annulling the proceedings of state courts, give such relief, in a case like the one before us, as is consistent with the principles of equity. As said in *Barrow* v. *Hunton*, 99 U. S. 80, 85, the character of the case ' is always open to examination, for the purpose of determining whether, *ratione materiæ*, the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it.' This whole subject was fully considered in *Johnson* v. *Waters*, 111 U. S. 640, 667, 4 Sup. Ct. Rep. 619. That was an original suit in the circuit court of the United States for the district of Louisiana. It was brought by a citizen of Kentucky against citizens of Louisiana. Its main object was to set aside, as fraudulent and void, certain sales made by a testamentary executor under the orders of a probate court in the latter state. It was contended that the plaintiff was concluded by the proceedings in the probate court, which was alleged to have exclusive jurisdiction of the subject-matter, and that its decision was conclusive against the world, especially against the plaintiff, a party to the proceedings. This court, while conceding that the administration of the estate there in question properly belonged to the probate court, and that, in a general sense, the decisions of that court were conclusive and binding, especially upon parties, said: ' But this is not universally true. The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings.' "

After a further quotation from *Johnson* v. *Waters* and other cases, and citing numerous authorities, the court said:

"These principles control the present case, which, although involving rights arising under judicial proceedings in another jurisdiction, is an original, independent suit for equitable relief between the parties; such relief being grounded upon a new state of facts, disclosing not only imposition upon a court of justice in procuring from it authority to sell an infant's lands when there was no necessity therefor, but actual fraud in the exercise, from time to time, of the authority so obtained. As this case is within the equity jurisdiction of the circuit court, as defined by the constitution and laws of the United States, that court may, by its decree, lay hold of the parties, and compel them to do what, according to the principles of equity, they ought to do, thereby securing and establishing the rights of which the plaintiff is alleged to have been deprived by fraud and collusion."

In *Marshall* v. *Holmes*, 141 U. S. 596, 12 Sup. Ct. Rep. 62, which was a case where the plaintiff in error, Mrs. Marshall, a citizen of the state of New York, filed a petition for injunction in the state district court of Louisiana, representing that David Mayer, one of the defendants in error, had obtained in that court judgments against her on false testimony and forged documents, and that equity and good conscience required that they be annulled and avoided for reasons set forth in her petition, the question of jurisdiction was presented upon a petition for the removal of the cause to the circuit court upon the ground of the diverse citizenship of the parties. The court, after reviewing former cases, said:

"These authorities would seem to place upon question the jurisdiction of the circuit court to take cognizance of the present suit, which is none the less an original, independent suit because it relates to judgments obtained in the court of another jurisdiction. While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge that Mayer shall not enjoy the inequitable advantage obtained by his judgments. A decree to that effect would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a state court. It would simply take from him the benefit of judgments obtained by fraud."

Applying these principles to this case, does it not necessarily follow that, if the bill is to be treated as an original independent bill, this court has no more power or authority over the decree in the former suit than any other court of equity would have? As the state courts could grant all the relief which this court could with reference to the parties to this bill, without any conflict as to the authority of this court over the original suit between other parties, is it not apparent that this court has no jurisdiction? If the jurisdiction of this court upon the bill can be maintained at all, it must be upon the ground that it is dependent upon or ancillary to the original bill in the former suit. The question as to what facts are necessary to constitute ancillary jurisdiction in the national courts has been frequently discussed. *Dunn* v. *Clarke*, 8 Pet. 1; *Clarke* v. *Mathewson*, 12 Pet. 164; *Freeman* v. *Howe*, 24 How. 450; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 633; *Railroad Cos.* v. *Chamberlain*, 6 Wall. 748; *Jones* v. *Andrews*, 10 Wall. 327; *Christmas* v. *Russell*, 14 Wall. 81; *Barrow* v. *Hunton*, 99 U. S. 82; *Krippendorf* v. *Hyde*, 110 U. S. 284, 4 Sup. Ct. Rep. 27; *Pacific R. R.* v. *Missouri Pac. Ry. Co.*, 111 U. S. 521, 4 Sup. Ct. Rep. 583; *O'Brien Co.* v. *Brown*, 1 Dill. 588; *Dunlap* v. *Stetson*, 4 Mason, 360; *Conwell* v. *Valley Canal Co.*, 4 Biss. 200; *Barth* v. *Makeever*, Id. 212; *Osborn* v. *Railroad Co.*, 2 Flip. 506; *Bowen* v. *Christian*, 16 Fed. Rep. 730; *Wagon Co.* v. *Snavely*, 34 Fed. Rep. 823; *Yeatman* v. *Bradford*, 44 Fed. Rep. 536.

From the principles announced in these authorities, the ancillary jurisdiction of the court can only be maintained where the parties to a former suit are before the court, or the facts are such as to make the case a continuation of the former suit, or where the court is called upon to enforce or vacate its judgment or decree, or set aside its process, or to give relief with reference to property in its possession or under its control, or to bring in outside parties having an interest in the litigation, or where the property involved is in the custody of the court or its officers, and the rights of parties thereto could not be determined in any other court without a conflict of jurisdiction between the courts. The form of the proceeding must, in every case, be determined by the particular facts alleged in the bill.

In *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 633, the court said:

"The question is not whether the proceeding is supplemental and ancillary, or is dependent and original, in the sense of the rules of equity pleading, but whether it is supplemental and ancillary, or is to be considered entirely new

and original, in the sense which this court has sanctioned with reference to the line which divides the jurisdiction of the federal courts from that of the state courts. No one, for instance, would hesitate to say that, according to the English chancery practice, a bill to enjoin a judgment at law is an original bill, in the chancery sense of the word. Yet this court has decided many times that, when a bill is filed in the circuit court to enjoin a judgment of that court, it is not to be considered as an original bill, but as a continuation of the proceeding at law; so much so that the court will proceed in the injunction suit without actual service of subpœna on the defendant, and though he be a citizen of another state, if he were a party to the judgment at law. The case before us is analogous. An unjust advantage has been obtained by one party over another by a perversion and abuse of the orders of the court, and the party injured comes now to the same court to have this abuse corrected, and to carry into effect the real intention and decree of the court, and that while the property which is the subject of contest is still within the control of the court and subject to its order."

That case, in its facts which supported the ancillary jurisdiction of the court, is quite different from this case. (1) The parties defendant here were not parties to the former suit; (2) the property which is the subject of contest is not still within the control of the court, and subject to its order. The question whether a suit is in its nature separate and independent, or whether it is a supplementary proceeding so far connected with the original suit as to be an incident to it or a continuation of it, was discussed, and the distinction stated, in *Barrow* v. *Hunton*, 99 U. S. 82:

"If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise the circuit courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different states. Such a result would be totally inadmissible. On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding; and, according to the doctrine laid down in *Gaines* v. *Fuentes*, 92 U. S. 10, the case might be within the cognizance of the federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; and in the other class the investigation of a new case, arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

The distinction between the cases where the jurisdiction of the court can be maintained and where it cannot is pointed out in *Dunn* v. *Clarke*, *supra*. In that case the complainants filed a bill for an injunction to enjoin a judgment recovered against them in an action of ejectment, and for a decree for a conveyance of the land in controversy. The parties to the bill were all citizens of the state of Ohio. The judgment in the ejectment suit was obtained by one Graham, a citizen of the state of Virginia, who died after the rendition of the judgment; and Dunn, the

defendant in the equity suit, held the land recovered in the former suit in trust, under the will of Graham. Upon these facts the court said:

"No doubt is entertained by the court that jurisdiction of the case may be sustained, so far as to stay execution on the judgment at law against Dunn. He is the representative of Graham; and, although he is a citizen of Ohio, yet this fact. under the circumstances, will not deprive this court of an equitable control over the judgment. But beyond this the decree of this court cannot extend. Of the action at law, the circuit court had jurisdiction; and no change in the residence or condition of the parties can take away a jurisdiction which has once attached. If Graham had lived, the circuit court might have issued an injunction to his judgment at law, without a personal service of process, except on his counsel, and, as Dunn is his representative, the court may do the same thing against him. The injunction bill is not considered an original bill between the same parties as at law; but if other parties are made in the bill, and different interests involved, it must be considered, to that extent at least, an original bill, and the jurisdiction of the circuit court must depend upon the citizenship of the parties."

With reference to third parties the ancillary jurisdiction may be maintained—

"In a cause over which a national court has acquired jurisdiction solely by reason of the citizenship of the parties, if the rights and interests of third persons should become complicated with the litigation, either as to the original judgment, or any property in the custody of the court, or any abuse or misapplication of its process; and if no state court has power to guard and determine those rights and interests without a conflict of authority with the national court, the latter court will, from the necessity of the case, and to prevent a failure of justice, give such third persons a hearing, irrespective of their citizenship, so far as to protect their rights and interests relating to such judgment or property, and as to correct any abuse or misapplication of its process, and no further." *Conwell* v. *Valley Canal Co., supra.*

In *Osborn* v. *Railroad Co., supra,* it is held that a party having an interest, though not a party to the suit, may intervene to assert his rights, without reference to the citizenship of the parties.

In *Freeman* v. *Howe, Krippendorf* v. *Hyde,* and *Pacific R. R.* v. *Missouri Pac. Ry. Co.,* it is held that bills filed on the equity side of the court to restrain or regulate judgments or suits at law in the same court, to prevent injustice or an inequitable advantage under mesne or final process, may be maintained, as ancillary and dependent, supplementary merely to the original suit out of which it arises, without reference to the citizenship of the parties; as, for instance, in cases when property in the possession of a third person claiming title thereto is seized and levied upon by the United States marshal on mesne process issued out of the circuit court of the United States as the property of the defendant in the suit, because such third person would have no remedy against the officer, and hence he could seek redress in the court having custody of the property, by ancillary proceedings. The facts alleged in complainant's bill do not, in my judgment, bring this case within any of the grounds stated in the foregoing authorities, authorizing the ancillary jurisdiction, unless it be that this court can, in this proceeding, set aside the former decree.

Is this suit of such a character as will authorize and empower this court, if the facts are proven as alleged in the bill, to vacate and set aside the judgment, order, and decree in the former suit?   In the former suit this court entered a judgment *in personam* in favor of William Sharon, under and in pursuance of a stipulation between the parties to that suit. William Sharon is dead.   The former suit has not been revived.   William Sharon is not before the court.   Complainant seeks to set aside the decree upon the ground that William Sharon left no estate, and that the property which he held in trust for her benefit has been conveyed to the defendants in trust for the heirs of said William Sharon.   But this property cannot be acquired by complainant, nor can there be any accounting in regard thereto, unless the decree of this court in the former suit is first set aside and annulled.   If there is no personal representative of the estate of William Sharon, it is difficult to see how the court has any power in this action over the former decree.   The ancillary jurisdiction of this court in this respect must certainly depend upon its power and authority over the decree in the former suit.   There was no appeal from the judgment; no motion to set it aside or to modify it during the lifetime of William Sharon.   There was no attempt to have the suit revived after his death.   The present action is not brought against his estate. There is no personal representative of William Sharon before the court. How then can this court, in this suit against the parties defendants, who were not parties in the former suit and are not charged with any fraud in procuring the compromise or the stipulation upon which the judgment was entered, make an order setting aside that judgment or decree? It is contrary to every principle of equity jurisprudence for this or any other court to set aside a judgment or decree upon the ground of fraud, or any other cause, without having all the parties to such judgment or decree before the court.   In the vast multitude of authorities cited by complainant's counsel, no such case has been brought to the attention of the court, and it is safe to say that no such case can be found in the books.

In *Harwood* v. *Railroad Co.*, 17 Wall. 80, there had been a foreclosure and sale of a railroad in a suit brought by George Carlisle, as trustee of a second mortgage, and the complainant, Harwood, brought an action before the court to vacate the decree in the former suit upon the ground that it was fraudulently obtained.   Carlisle was not made a party to the suit.   The court said:

"Mr. Carlisle, the plaintiff in the suit in which the decree is sought to be vacated, is not a party to this proceeding.   In the former suit all the forms of law, at least, were complied with. · The parties having interests which it was sought to foreclose were made parties, a decree was taken in the ordinary form, that they be foreclosed, and that the property be sold.   A sale was had, under which the present defendants claim title.   This was done upon the prayer of Mr. Carlisle, by his authority, and upon his procurement.   Third parties now come into court and ask that all these proceedings, completed according to the forms of law, and sanctioned by the decree of the court, taken at the request of Mr. Carlisle and for which he is responsible, be vacated and declared fraudulent and void.   This is sought to be done without his knowl-

edge, and no opportunity is given to him to sustain his decree or to rebut the alleged fraud, and no reason or excuse is given why he is not made a party. This is against authority and principle. No case is cited to justify it, and it is believed that none can be found. The judgments of courts of record would be scarcely worth obtaining if they could be thus lightly thrown aside. The absence of the plaintiff in the original suit is a fatal defect."

In that case no excuse was given why the party to the former decree was not made a party to the action brought to set it aside. Therein it differs from the present case. Here a reason is given. Complainant's counsel, in discussing the facts, say that complainant is not asking any relief from the estate of William Sharon. She only claims that William Sharon had certain property of the estate of W. C. Ralston in trust; that he failed to account for it to complainant as the sole devisee of said estate, and by a deed of trust he conveyed the property to the persons who are made the defendants in this suit; that William Sharon, when he died, left no estate; and numerous authorities have been cited by complainant to show that the estate of William Sharon has no interest in this suit, and that the defendants are the only parties having any interest whatever in this litigation. If this contention is true, then what becomes of the question of jurisdiction, it being alleged that all the parties to the suit are citizens of this state? If this theory is correct, the suit must certainly be dismissed, as the state courts, in that event, could give all the relief to which complainant is entitled.

In *Wickliffe* v. *Eve*, 17 How. 470, the bill was filed to set aside a decree alleged to have been obtained by fraud, without making the defendant in the decree sought to be set aside a party to the action. The court said:

"The complainant asks that the decree releasing Eve and others may be set aside as fraudulent, and the balance due on Eve's debt may be decreed to him, as administrator of Luke Tiernan; and in this capacity he seeks to retain for himself, and subject the property of the firm to pay the debts of an individual partner. Charles Tiernan is no party to this proceeding; and, as he was not brought before the court, there could be no jurisdiction taken of the subject-matter, he being legal owner of the chose in action claimed, if the claim had any existence. The bill was dismissed in the circuit court, because the complainant and the defendants were citizens of Kentucky, and therefore the court declared it had no jurisdiction, for want of proper parties. To obviate this objection, it is insisted here, on the part of the appellant, that this is a bill of review of the proceeding in the cause of John G. Eve and others against Charles Tiernan. The appellant having been refused the privilege to file a bill of review, he then filed this original bill, impeaching the decree for fraud, and to this bill none but citizens of Kentucky were parties. It is manifestly an original bill, within the description given by Mr. Justice Story's Equity Pleading, § 404, and, being so, the circuit court had no jurisdiction of the parties. It is ordered that the decree, dismissing the bill, be affirmed."

In *Friley* v. *Hendricks*, 27 Miss. 412, there was a bill of review filed to set aside a decree rendered in favor of one Dinkins. The bill stated that Dinkins had died, and that his estate had been administered upon and his administrator discharged before the bill of review was filed.

Hendricks was the only party defendant, he being the purchaser of the property involved in the decree. The court said:

"A preliminary objection to the bill of review is raised here under the demurrer, which is decisive of the case; this is, that the bill does not make the complainant in the decree sought to be reversed, or his representatives, parties to the proceeding. The legal object and effect of a bill of review being to have the decree examined and reversed, it was formerly held to lie only against those who were parties to the original bill, (2 Barb. Ch. Pr. 94; Lube, Eq. Pl. 129,) in analogy to a proceeding in error. It was afterwards extended so as to embrace other parties in interest. Still, it is held to be indispensable that all the parties to the original decree should be included. *Bank* v. *White*, 8 Pet. 268; Story, Eq. Pl. § 420. And, if they are dead, their representatives must be made parties, as in other proceedings in error. The reason of this is manifest, that, the proceeding being in its nature one to reverse the original decree, it would be inequitable to entertain such case without giving the party in whose favor the decree was rendered an opportunity to justify it. This, being a technical bill of review, must fall by the application of this principle. Nor is the objection obviated by taking the ground that the bill does not seek to disturb the rights of the complainant under the original decree; for that position deprives it of its essential character, and leaves it no ground to stand on. * * * It changes its character from a bill of review, which its whole structure and object assume it to be, to that of an original bill for relief against Hendricks, the purchaser of the property sold under the decree. Viewed in the latter aspect, the mere reversal of the decree for the errors alleged in the bill would not divest the rights of the purchaser, who was neither a party nor privy to the decree, and against whose equity no just charge is made."

The argument made by complainant's counsel, that the defendants F. W. Sharon and F. G. Newlands are the legal representatives of William Sharon, cannot be sustained. It is true that heirs, trustees, and grantees of real property, assignees of contracts or patents, or receivers or assignees in bankruptcy, may, in certain cases, be considered as the legal representatives of the property involved. But there is a clear distinction between such cases and the one under consideration. The defendants F. W. Sharon and F. G. Newlands are not the "legal representatives" of William Sharon, deceased, within the meaning of those words as applied to proceedings instituted to set aside the judgment in the former suit. The general rule is that no person can revive a suit abated by the death of a party, unless he is in by privity with the deceased. But it is not sufficient that he may, in a legal sense, be a privy in estate; he must be a privy in representation. Lord Coke, in 1 Inst. 271, says: "There are four sorts of privies, viz.: Privies in estate, as donor and donee, lessor and lessee; privies in blood, as heir and ancestor; privies in representation, as executors and administrators; and privies in tenure, as lord and tenant; which are all reducible to two heads, privies in law and privies in deed. Now, the right to revive is not applicable to all these different sorts of privies, but by the authorities is expressly confined to persons who are in privity by representation, such as heirs in relation to the real estate, and executors and administrators in relation to the personalty." *Slack* v. *Walcott*, 3 Mason, 508.

The question as to the various definitions that may be given to the term "legal representative" is not involved in this suit. Without attempting to review the authorities cited by complainant as to the meaning of the words,—which always depends upon the facts of each case,— it is deemed enough to say that, in a case like the present, when the decree is wholly *in personam*, there must be a personal representative to represent the person of the deceased before the decree can be set aside. The words "legal representative," when used with reference to a case of this kind, mean an executor or administrator, or devisee in a will, who has the power and authority under the law to legally represent the estate of a deceased person. In all of the numerous cases cited by the complainant, where the question is referred to, this distinction is clearly recognized. *Johnson* v. *Van Epps*, 110 Ill. 559; *Cox* v. *Curwen*, 118 Mass. 198; *Cochran* v. *Cochran*, 127 Pa. St. 490, 17 Atl. Rep. 981; *Railroad, etc., Co.* v. *Bryan*, 8 Smedes & M. 234; *Warnecke* v. *Lembca*, 71 Ill. 91; *Bowman* v. *Long*, 89 Ill. 19.

The case of *People* v. *Mullan*, 65 Cal. 396, 4 Pac. Rep. 348, is not in opposition to the views here expressed. There a motion was made by a corporation to set aside a judgment against Mullan which had been obtained without any legal service upon him. A deed to certain lands affected by the judgment had been transferred by Mullan to the corporation after the judgment was rendered. The court held that the corporation stood in the shoes of Mullan, and, inasmuch as the corporation could have moved to set aside the judgment in Mullan's name, it would be sacrificing form to substance to hold otherwise. From the views expressed, it necessarily follows that this court has no jurisdiction in this case. It is therefore unnecessary to consider the other grounds of the demurrer. The demurrer is sustained, and the bill dismissed.