# J. Q. LLOYD CHEMICAL COMPANY, Respondent, v. G. MATHES & SONS RAG COMPANY, Appellant.

### St. Louis Court of Appeals, November 30, 1909.

1. NEGLIGENCE: Fires: Care Required. The law requires a
man who kindles a fire to regulate the care used to prevent it
from damaging his neighbor in proportion to the risk rea-
sonably to be apprehended.

2. ———: ———: Evidence: Evidence of Other Fires Admissible,
Although Negligence an Issue. In an action for damages for
destruction of property by fire, alleged to have been caused
by the negligence of defendant in setting out and maintaining
a fire across the street from the property destroyed, evidence
that on other occasions sparks and embers were carried from
a fire maintained at the same location and deposited on the
building in which said property was situated was competent
within proper limits as defined infra, although the question of
defendant's negligence was one of the issues in the case.

3. ——: ——: ——: ——: **When Admissible and When Not.** Such evidence is admitted or rejected according to the strength or weakness of its tendency to prove the fact in proof of which it is offered; and if this tendency is cogent enough for a fair inference, instead of a mere conjecture or surmise, the testimony will be admitted, otherwise not.

4. ——: ——: ——: ——: ——: **Conditions Must be Similar.** Such evidence is admissible only when the main conditions, under which the analogous events and the one at issue occurred, are alike.

5. ——: ——: ——: **Evidence of Other Fires Held Inadmissible: Facts Stated.** In an action for damages for destruction of property by fire, alleged to have been caused by the negligence of defendant in setting out and maintaining a fire across the street from the property destroyed, where it was shown that the evening said property was destroyed there was a pile of glowing embers from two to four feet high where defendant had been burning cars, the glow of which was seen across the street, testimony that on prior occasions heated embers or flaming materials, which would kindle a fire, had been caught up from similar piles and borne to buildings across the street was competent, as tending to prove the possibility and probability of plaintiff's building having been set on fire by such burning matter wafted to it from said pile of embers; but testimony that conflagrations like the burning of three or four large houses had occurred on other days running through six weeks; that the heat from car-fires was so great doors and windows across the street had to be closed, and when the fires were in full blast, embers and flaming sticks a foot long had been borne through the air and dropped on the buildings had no tendency to prove plaintiff's building was set on fire by sparks or embers blown from said pile of embers burning on the night in question, and hence said evidence was inadmissible.

6. ——: ——: ——: **Evidence of Other Fires Held Admissible.** But, in such case, testimony that an awning on plaintiff's building, or on an adjacent one, caught fire from a coal or spark one evening, when the car-fire had sunk to a heap of embers was admissible, although the awning was nearer the car-fire and was more inflammable than the part of plaintiff's building where the fire in question broke out.

7. ——: ——: **Instructions: Indefiniteness as to Precautions Required.** In an action for loss from fire communicated from one started by defendant, it is better for instructions to predicate recovery on too close proximity of defendant's fire to

plaintiff's property, and want of proper attention to it, than merely on want of proper precautions, defined by the court as such precautions as a man of ordinary prudence and diligence would take under similar circumstances.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

REVERSED AND REMANDED.

*E. T. Miller* and *T. E. Francis* for appellant.

(1) (a) The cause of action declared upon is not bottomed upon any statute. Therefore, proof of specific acts of negligence on the part of defendant was a prerequisite to a recovery by plaintiff. Catron v. Nichols, 81 Mo. 80; Coffman v. McCauslin, 70 Mo. App. 34; Smith v. Railroad, 37 Mo. 287. (b) Plaintiff's instruction number 1 is erroneous for the reason that it did not define the issue of negligence which the jury were to try nor submit any specific act of negligence to them, but permitted them to return a verdict on any theory they might formulate. Sommers v. Transit Co., 108 Mo. App. 319; Mulderig v. Railroad, 116 Mo. App. 655; Duerst v. Railroad, 163 Mo. 607; Allen v. Transit Co., 183 Mo. 411; Lesser v. Railroad, 85 Mo. App. 326; Heinzeman v. Railroad, 182 Mo. 611. (2) The court committed error in admitting, over defendant's objections, evidence that sparks and embers were carried to buildings in the vicinity of the building destroyed, on occasions other than the one in question. (a) This character of evidence is never competent where, as is the case at bar, there is an issue of negligence, because in such cases, its tendency is to mislead the jury and cause them to determine this issue on collateral facts. Goble v. Kansas City, 148 Mo. 475; Coale v. Railroad, 60 Mo. 232; Campbell v. Railroad, 121 Mo. 348. (b) This character of evidence is never admissible (except where the facts rest peculiarly within the knowledge of

defendant), without proof of similarity of conditions at the time of the fire and at the other time sparks and embers were carried. Coffman v. McCauslin, 70 Mo. App. 34; Koontz v. Railroad, 20 Ore. 3; Sheldon v. Railroad, 14 N. Y. 218; Wheeler v. Railroad, 60 N. Y. Sup. (67 Hun) 639, 642; Hoskinson v. Railroad, 66 Vt. 626; Gibbons v. Railroad, 58 Wis. 335; Campbell v. Railroad, 121 Mo. 351. There was no proof that the facts concerning the fire were any better known to defendant than to plaintiff, nor was there any proof that the conditions were similar on the several occasions. (c) The cases of Matthews v. Railroad, 142 Mo. 645; Gibbs v. Railroad, 104 Mo. App. 276; Lead Co. v. Railroad, 123 Mo. App. 394; Tapley v. Railroad, 129 Mo. App. 88, and other like cases, are not in point on this question, for the reasons, first, that there was no issue of negligence in these cases, while there is in the case at bar; and second, that the condition of the engines, in those cases, was a matter peculiarly within the knowledge of the defendants, while in the case at bar the facts concerning the fire were as well known to one party as to the other. Authorities under sub-divisions a and b, supra. (3) The court erred in permitting plaintiff to prove, over defendant's objections, that the awning on the front part of its building was destroyed by fire communicated from defendant's premises on a date prior to the fire which gave rise to the litigation. The evidence would not be admissible even in a railroad case, for in such cases it is only when the sparks were carried as far or farther than the sparks were carried at the time the damage was done that such evidence is competent. According to plaintiff's theory, the building took fire in a little ventilator on the roof, thirty feet farther than the awning from the place where the cars were burned.

*Ferriss, Zumbalen & Ferriss* and *T. W. White* for respondent.

(1) Plaintiff's instruction No. 1 is not erroneous. It is as specific as the facts of the case permit. Higgins v. Dewey, 107 Mass. 494; Powers v. Craig, 22 Neb. 621; Needham v. King, 95 Mich. 303; Hervey v. Nourse, 54 Me. 256; 13 Am. and Eng. Ency., pp. 463 and 464. (2) As defendant did not request any instructions at all on the issue of negligence, it cannot now complain that plaintiff's instruction on that issue was too general. 2 Thompson on Trials, sec. 2341 and sec. 2346; 1 Brickwood Sackett on Instructions, (3 Ed.), sec. 156; 1 Blashfield on Instructions, secs. 129 and 130; McQuillin on Instructions in Civil Cases, sec. 132; Drury v. White, 10 Mo. 355; Strickland's Heirs v. McCormack's Heirs, 14 Mo. 166; Drey v. Doyle, 99 Mo. 459; Mitchell v. Bradstreet Co., 116 Mo. 226; Browning v. Railroad, 124 Mo. 55; Lane v. Railroad, 132 Mo. 4; Matthews v. Railroad, 142 Mo. 645; Marman v. Donohoe, 153 Mo. 263; Wheeler v. Bowles, 163 Mo. 398; Bank v. Ragsdale, 171 Mo. 186; Geisman v. Electric Co., 173 Mo. 679; Minter v. Bradstreet Co., 174 Mo. 444; Longan v. Weltmer, 180 Mo. 322; Carpenter v. Hamilton, 185 Mo. 603; Smith v. Fordyce, 190 Mo. 1; Waddell v. Railroad, 213 Mo. 8; Morgan v. Mulhall, 214 Mo. 451; Estes v. Fry, 22 Mo. App. 80; Haymaker v. Adam, 61 Mo. App. 581; Ruth v. Railroad, 70 Mo. App. 190; Lackland v. Railroad, 101 Mo. App. 420; Parman v. Kansas City, 105 Mo. App. 691; Cornwell v. Transit Co., 106 Mo. App. 135; Ashby v. Gravel Road Co., 111 Mo. App. 79; Marion v. Railroad, 124 Mo. App. 445. (3) The admission of evidence that sparks and embers on prior occasions escaped and were carried across the street to plaintiff's building and to other buildings adjacent thereto, was proper. 13 Am. and Eng. Ency., 514; 1 Wigmore on Ev., sec. 452; Campbell v. Railroad, 121 Mo. 340; Matthews v. Railroad, 142 Mo. 645;

Hoover v. Railroad, 16 S. W. 480 (Mo. Sup.); Gibbs v Railroad, 104 Mo. App. 276; Lead Co. v. Railroad, 123 Mo. App. 394; Tapley v. Railroad, 129 Mo. App. 88. (4)   The fact that the awning on front of the Lloyd building was about twenty feet nearer to defendant's fire than was the cupola on top of the building, merely affected the probative value of the evidence as to the burning of  the awning; it did not make such evidence incompetent.

GOODE, J.—Plaintiff and defendant are both incorporated companies, and the former sues for damages sustained by the burning of personal property owned by it and contained in a one-story brick and frame building on the east side of De Baliviere avenue in the city of St. Louis, which plaintiff occupied as tenant, and where it manufactured chemical compounds.   The property destroyed consisted of furniture, machinery, apparatus, fixtures, partitions, stock and other articles.   On the west side of De Baliviere and opposite the building occupied by plaintiff, stand extensive car  sheds  of  the United Railways Company, a  corporation  operating street railways in the city of St. Louis.   The Railways company owns, in connection with its sheds, a tract of land four hundred feet wide on De Baliviere and extending back westwardly twelve hundred  feet.   The building which plaintiff occupied on the opposite side of the street was sixty feet long and twenty-five feet wide, fronting on De Baliviere.   Near the center of the roof was a cupola or ventilator six feet wide, twelve feet long and four feet high, with slatted sides made of pine lumber one inch thick, seven inches wide and  placed five or six inches apart.   The United Railways Company sold two hundred and thirty-three old street cars to defendant G. Mathes & Sons Rag Company, which purchased to get the scrap iron in them.   To do this the Mathes Company burned the cars on the lot of  the railways company to the westward and opposite the

building occupied by plaintiff. De Baliviere avenue running north and south, was about seventy-five feet wide, and hence there was that distance at least, between plaintiff's property and the fire. Just how far west of the east line of the railways company's lot the cars were burned is in dispute on the testimony, the witnesses varying in their statements from twenty feet from the sidewalk on the west side of De Baliviere to one hundred feet or more. Hence there is a discrepancy in the testimony as to how far the cars were burned from defendant's building of from ninety-five feet to about one hundred and eighty, or maybe more; for the witnesses differed about the exact width of De Baliviere avenue. The cars were burned in the months of April and May, 1906, over a period of six weeks, and from two to eight cars were burned at a time and the scrap iron taken by defendant from the ashes. It required about two hours to burn a pile. According to the testimony for plaintiff, its building caught fire in the cupola on the evening of May 29th, at ten o'clock or past, extended to the rest of the building and destroyed a great deal of plaintiff's property. The cupola was some thirty feet back from the front of the building and therefore was that much further from the fire. For defendant the evidence inclines to prove the fire started inside the building. Four or five gas jets were left in flame, but turned low, at the close of business on the evening the house burned. These jets of flame were each about five inches wide and burned under steel tanks in which chemicals were mingled. The testimony for plaintiff is that only incombustible materials were in proximity to the jets. Some stoves were in the house but the general manager of plaintiff testified there had been no fire in them the day of the loss.

The gravamen of the case was that defendant negligently set out and maintained the fire on the premises of the United Railways Company on May 29th, "and did so negligently manage said fire that sparks and

burning embers were allowed to escape from it and be scattered abroad, and that by reason of the negligence of defendant as aforesaid, certain sparks, cinders and burning embers from the said fire were transported and carried through the air and across the intervening space between the said fire and the said property of plaintiff, and did set fire to, burn, injure and destroy the said property of plaintiff, and did so burn and injure the building which plaintiff occupied that plaintiff was not able to use the same for a period of ——— weeks." Judgment was prayed for thirty-six hundred dollars and one was obtained upon the verdict of the jury for three thousand dollars.

The evidence was surprisingly conflicting as to whether any cars were burned on May 29th, the date when the building occupied by plaintiff caught fire. A witness said they were burning all day and when he left his place of business, which was adjacent to plaintiff's, at six o'clock in the evening, a pile of hot embers, iron and ashes three or four feet high was on the lot—relics of the cars burned that day—saw the same relics at eleven o'clock p. m. Much testimony of a positive character was given for defendant that no cars were burned on that day, the last prior burning being on May 25th, and this was corroborated by the records of the Railways Company which recorded the dates of the burning of cars. It is conceded there was enough evidence in plaintiff's favor on that issue to send it to the jury. The tendency of the evidence for plaintiff was to prove the wind on the evening of the fire set toward the Lloyd building, but there was other evidence, including the testimony of the superintendent of the National Weather office in St. Louis, that the wind was from the east or southeast and hence blowing from the Lloyd building toward the Railways Company's lot. Plaintiff was allowed to introduce evidence that on prior days sparks and embers from the burning cars had been carried across De Baliviere avenue by the wind

and had settled on the Lloyd building.   To the admission of this evidence an exception was saved and the ruling is now assigned for error.   In the same connection testimony was received that sparks, firebrands, and sticks a foot long settled on another building; that occupants of both buildings were compelled to shut the doors of the buildings opposite the car-fires to keep out sparks, smoke and ashes; that the heat would burn their faces; that awnings were burned by sparks on several occasions, and two or three weeks before the fire in question, one was completely destroyed; defendant was notified of this loss and paid for another awning, but continued to burn cars on the Railways Company's lot; that sometimes the conflagration on the lot was the same "as if three or four pretty big houses were burned at one time."   The reasons for the objection to the reception of evidence regarding the burnings prior to May 29th, can be shown best by copying them from the record:

"Mr. Miller:   The defendant United Railways Company wishes to make one objection here to this character of testimony to save making it every time the question is asked.   It objects to the testimony of any fires maintained on the premises of the United Railways Company prior to the day of the fire of which plaintiff complains, the fire of May 29, 1906.   The testimony is wholly immaterial and it is irrelevant to any of the issues.   It brings up collateral issues for the jury and the only tendency of the testimony as to former fires is to confuse the jury; and it brings up testimony of which the defendants had not been notified to prepare a defense to.

"Mr. Levison:   The defendant Mathes Rag Company objects to the introduction of any evidence of any fire prior to that alleged in the petition or after the date of May 29, 1906.

"Mr. Ferris:   Our contention is that these fires were all of the same character, located on the same place, the same things were being burned by the same people,

and we are going to follow this testimony up by showing that on occasions prior to May 29th, embers and ashes had been blown across the street; that on one occasion the awning of this same place had caught fire, and the testimony is clearly competent under the authorities of this State and other States. There are innumerable railroad cases where sparks from the engine have set fire to property, and there are innumerable cases where sparks from the same railroad had been blown and fire caused, and parties have been held liable in those cases. If your honor cares to see any authorities I can furnish them right here.

"Mr. Miller: I desire to add a further reason for the objection, that it is not shown that the conditions were the same at any of the previous times, and to go into this character of testimony would require an examination into the conditions prevailing at each previous time that the witness may be permitted to refer to, and it is surely not within the purview of the pleadings."

That objection was renewed from time to time as proof was offered about the burnings of cars and the effect of the burnings on buildings across the street, on days prior to the date of plaintiff's loss. Bits of testimony will be quoted regarding conditions at the site where cars were burned on the day of the loss:

"Q. I understand you (president of a company occupying a building on the east side of De Baliviere) did leave about six o'clock on that day? A. Yes, sir.

"Q. I will ask you to state whether or not at that time there was a fire across the street on the premises of the United Railways Company? A. There was a fire there at six o'clock on the evening of the 29th.

"Q. Well, what was the character of the fire? A. Well, as I remember at that time it was rather burned out, it seemed to me. I didn't notice any great flame, but I saw a heap of coals; live coals.

"Q. Well, was there any flame at all in sight at that time? A. Yes, I think I saw some flames. Now, it may be they continued that fire after I went home; I don't know.

"Mr. Miller: I move to strike that out."

Motion sustained.

"Mr. Ferris: I just want to know what the condition was when you left there, and what you saw? A. Well, I saw a big pile of live coals which was the result of a fire that had burned during the afternoon."

"I wouldn't think it was blowing very hard; the wind usually abated toward evening you know, and stopped blowing toward evening; but I remember it blew pretty hard there for, Oh, two weeks, anyway—it blew very hard from the west. It would carry embers across the street just like sky-rockets."

"The court: Do you mean to say that on that night you saw a pile of hot iron and coals four or five feet high, on the night of May 29th? A. I don't remember how high the body of coals was on that night."

"Mr. Levison: How was the pile of red hot iron and red hot coals and ashes at six o'clock on the evening of May 29, 1906, when you say you left your place of business? A. I would estimate it as being several feet high. Probably two or three feet, or four feet high."

Error is assigned for the first instruction given for plaintiff, but this assignment can only be properly understood if the second instruction is read in connection with the first and hence will be copied:

"If you find and believe from the evidence that on or about May 29, 1906, the plaintiff was occupying the building known as No. 548 De Baliviere in this city, and was the owner of certain property located therein as mentioned in this petition; that on or about said date the defendant, by its servants, did set out or maintain a certain fire on the premises of the United Railways Company, and that said defendant failed to take proper precautions either in setting out said fire or managing

said fire after it was set out, and that by reason of the failure of defendant to take such precautions, said fire escaped and communicated itself to plaintiff's property and destroyed the same, then your verdict will be in favor of the plaintiff and against the defendant G. Mathes Sons Rag Company.

"You are instructed that the phrase 'proper precautions' as used in these instructions means such precautions as a man of ordinary prudence and vigilance would take under the same or similar circumstances. Whether such proper precautions were taken in this case is for you to decide from all the facts and circumstances in evidence.

"You are instructed that direct proof that fire was communicated to the building occupied by plaintiff from a fire across the street is not necessary if you are satisfied from all the evidence in the case that there was a fire across the street from which embers, coals or sparks were carried to and set fire to plaintiff's property."

The United Railways Company was made a co-defendant with the Mathes Company at first, but the trial resulted in its favor and the only defendant in this court is the Mathes Company.

1. The field of inquiry which the court permitted plaintiff to cover, embraced defendant's conduct during the six weeks cars were burned, and the effect of the separate burnings during different stages of each on the buildings across the street. Circumstances in evidence and which we have recited, show the intensity of the heat engendered and the quantity of sparks, embers and pieces of flaming wood wafted to these buildings, varied with the varying fires, according as fewer or more cars were burned at once, the direction and velocity of the wind, and especially the stage of the conflagration. Sometimes two cars were burned together and sometimes more, to as many as eight; and on the latter occasion one witness said: "It was just the same

as if three or four pretty good sized houses were burned at one time." The direction of the wind varied on different days and during the hours of the same day, and while a pile of cars was in full blast the heat must have been greater and likely firebrands were borne toward plaintiff's building in larger quantities, than after the more combustible portions of the cars had been consumed and the fire had sunk to embers and ashes. Those facts indicate that plaintiff's building was in more danger of catching fire from the car-fires at certain times; wherefore diverse precautions to prevent them from catching were needed. And the law requires a man who kindles a fire to regulate the care used to prevent it from damaging his neighbor, in proportion to the risk reasonably to be apprehended. [1 Thompson, Negligence, sec. 730; Poepper v. Railroad, 67 Mo. 715; Townley v. Coal Co., 13 N. Y. Supp. 649.] In view of the natural need for more vigilance on some days than on others, and at some times of the same day, and the corresponding degree of care exacted of defendant by law, it was essential to a fair trial of the issues of whether the plaintiff's building was set on fire by burning matter wafted from the car-fires, and, if so, whether defendant had omitted proper precautions to prevent the occurrence, to control the admission of evidence on those issues by a consideration of the state of the car-fire when plaintiff's building caught. The contention of counsel for defendant that no proof should have been received of burning matter having been carried to the buildings across the street from any fire except the one charged to have ignited plaintiff's building, is untenable, and the argument advanced in support of it unsound. Evidence of such facts is said to be admissible when a defendant was absolutely liable if the plaintiff's property was burned by a fire communicated from a fire kindled or kept by defendant, for instance, a railroad company on whom the liability is imposed by statute, but not admissible when the de-

fendant's liability turns on whether the plaintiff's property was ignited from the defendant's fire in consequence of the latter's neglect. Evidence that fires other than the one in controversy were started from a fire which is charged to have set the one in controversy is received, "as tending to prove the possibility and a consequent probability," of the latter fire having been set by the same fire which started the other. [Grand Trunk, etc., R. R. v. Richardson, 91 U. S. 454; Sheldon v. Railroad, 14 N. Y. 218; Field v. Railroad, 32 N. Y. 339; Koontz v. Railroad, 20 Ore. 3; Chicago, etc., R. R. v. Gilbert, 51 Fed. 711; Pigott v. Railroad, 10 Jurist 571.] In the first of those cases the liability of the railroad company depended upon negligence, and the reception of the evidence was approved, not only on the question of the origin of the fire, but as tending to show a negligent habit of the officers and agents of the railroad company; we suppose in not properly attending to the engines in use to prevent them from throwing out fire. And no doubt the starting of an unusual number of fires in fields adjacent to railways by passing locomotives is competent to prove negligence in that regard; for the locomotives in use by a railway company are usually of similar construction, or, if they are not, proof of the fact is accessible to the company and nearly inaccessible to a plaintiff who sues it. [1 Thompson, Negligence, sec. 153; Spaulding v. Railroad, 30 Wis. 110; Koontz v. Railroad, 20 Ore. 3, 14.] The rules of law applied in an action against railway companies for fires started by locomotives are somewhat exceptional. A standard treatise says the requisite evidence to prove the setting of fires is the same in both classes of cases (*i. e.* where the issue is negligence and where it is not) ; for what would prove the fire was set by the company in one case would prove it was in another similar case, though in one the burden of proof of negligence might be on the plaintiff, while in the other the defendant

might be presumptively negligent. [3 Elliott, Railroads, sec. 1244.] If some of the earlier decisions in this State held to the contrary, they were discredited by the opinion in Hoover v. Railroad, 16 Southwestern Reporter, 480. In the present case we think evidence of facts tending to show the danger with which the car-fires threatened plaintiff's building and buildings adjacent to it was competent within the limits defined infra. The admissibility of evidence of previous similar occurrences, in actions for losses by fire, is regulated by the same principles which determine the relevancy of such evidence in all classes of litigation, when it is offered to prove the occurrence of incidents detached from the event in controversy, on the theory that these incidents incline to show said event happened, or did not happen, in the way the complainant alleges, and so as to lay the defendant liable or exonerate him. Such evidence is admitted or rejected according to the degree of its probative force—the strength or weakness of its tendency to prove the fact in proof of which it is offered. If this tendency is cogent enough for a fair inference, instead of a mere conjecture or surmise, the testimony will be admitted; otherwise it will be excluded. When appeal is made to a criterion of competency which, in the nature of things, must be indefinite, opinions are apt to vary about whether the requisite probative tendency exists in a particular offer of what we may venture to style. analogous evidence. But accuracy and uniformity of ruling on the point is assisted by one rule which the courts will observe in determining whether or not the evidence of other incidents is so relevant to the issue at bar as to be admissible. This rule relates to the similarity or dissimilarity of the main conditions under which the analogous events and the one at issue occurred, and admits evidence of the analogous events only when those conditions were alike.

145 App—44

The reason of the rule is that when the conditions were unlike, the possibility of the detached events and the one in controversy having come to pass from different causes is too strong for a reasonable inference to be drawn that because the former were due to a particular cause, the one in issue was due to the same cause. This subject is lucidly expounded in 1 Wigmore, Evidence, sec. 442, where the commentator sums up the result of the cases as follows:

"The general logical requirement is, then, that when a thing's capacity or tendency to produce an effect of a given sort, is to be evidenced by instances of the same effect found attending the same thing elsewhere, these other instances have probative value—i. e. are relevant—to show such a tendency or capacity, only if the conditions or circumstances in the other instances are similar to those in the case in hand. But this similarity need not be precise in every detail. It need include only those circumstances or conditions which might conceivably have some influence in affecting the result in question. . . . The similarity that is required, is, in short, a similarity of essential circumstances, or, as it is usually expressed, a substantial similarity, i. e. a similarity in such circumstances or conditions as might supposedly affect the result in question. The logical foundation of this principle has been already set forth in another place. As applied to the present sort of inference, it has constantly received the sanction of the courts; and whatever are the inconsistencies of its applications, there is substantial unanimity in the general reasoning."

Greenleaf says on the same subject:

"In evidencing a quality, tendency, capacity, etc., by instances of its effects or exhibitions or operations on other occasions, the natural and logical limitation is that the evidential instances should have occurred under substantially the same circumstances or condi-

tions as at the time in question; because, otherwise, they might well be attributed to the influence of some other element introduced by the differing circumstances." Greenleaf, Evidence (14 Ed.), sec. 14v.

Those statements of law are sanctioned by the adjudged cases, as will be seen from the authorities cited in support of the texts wherein the rule is illustrated by various states of facts. We cite: Clark v. Water Power Co., 52 Maine 68, 74; Clark v. Willett, 35 Cal. 534, 544; Hawk v. Charlemont, 110 Mass. 113; Hynes v. Burlington, 38 Vt. 350, 363; Buckley v. Kansas City, 95 Mo. App. 188; Graney v. Railroad, 140 Mo. 89, 103; Chamberlain v. Light and Power Co., 158 Mo. 1. If we look at the case at bar in the light of this rule of evidence, we realize that much of the testimony relating to fires prior to the day of plaintiff's loss, the intensity of the heat felt in the buildings across the street from those fires, and the quantity of burning matter carried to those buildings, had no tendency to prove plaintiff's house was ignited by matter carried from the bed of embers, ashes, and possibly small flames, which were the remains, on the night of May 29th, of the car-fire on that day. Defendant may have been negligent on previous occasions in burning as many as eight cars at a time, and the danger thereby threatened to adjacent property may have been very great. But however culpable those acts were, they did not damage plaintiff and were not the cause, proximate or remote, of his loss. If that loss was due to the negligence of the defendant, the proximate cause of it was either burning cars so close to plaintiff's property on the day of the 29th, that a pile of debris was left in combustion in too dangerous proximity to the property, or omitting later due precautions to prevent hot embers or firebrands from being blown from the pile. Stating the condition of this pile in the phase of the evidence most favorable to plaintiff, it was from two to four feet high, the glow of the embers

could be seen from across the street and one witness said he saw flames in it. This was around six or seven o'clock and, presumably, the combustion diminished from then on. Testimony that on prior occasions heated embers or flaming materials, which would kindle a fire, had been caught up from similar piles and borne to buildings across the street was competent as tending to prove the possibility and probability of plaintiff's building having been set on fire by such burning matter wafted to it on the night of May 29th. But testimony that conflagrations like the burning of three or four large houses had occurred on other days running through six weeks, that the heat from car-fires was so great doors and windows had to be closed across the street, and when the fires were in full blast, embers and flaming sticks a foot long had been borne through the air and dropped on the buildings had no tendency to prove plaintiff's house was set on fire by sparks or embers blown from the pile of debris that was burning on the night in question. There was testimony that an awning on plaintiff's house, or an adjacent one, caught fire from a coal or spark about seven o'clock one evening when the car-fire had sunk to a heap of embers; and though the awning was nearer to the fire than the cupola or ventilator on plaintiff's building, and was more inflammable, we think this incident sufficiently conduced to prove plaintiff's house could be set on fire by sparks borne from a pile of embers across the street, to be admissible. The grounds of objection stated by defendant's counsel included the one for which this evidence was inadmissible, *viz.*, because the incidents shown by it occurred under conditions too unlike those existing when plaintiff's house was burned. The evidence was of a most baneful tendency, as it was adapted to induce a belief in the minds of the jurors that defendant was careless of the danger to adjacent property from its fires, and thereby prejudice them against defendant;

was likely, also, to confuse them regarding the real issues to be determined.

2.  Without deciding the instruction for plaintiff is too indefinite in respect of the precautions defendant should have taken in burning cars, we remark that it will be in safer form if it predicates for recovery, too close proximity of the car-fire of May 29th, and want of proper attention to it.

The judgment is reversed and the cause remanded. All concur.